IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. |
| DAVID M. SCANLAN in his official capacity as Secretary of State for the State of New Hampshire, and the STATE OF NEW HAMPSHIRE. | ) ) ) ) ) ) |
| Defendants. | ) ) |

## **COMPLAINT**

As President Trump said earlier this year, "[f]ree, fair, and honest elections unmarred by fraud, errors, or suspicion are fundamental to maintaining our constitutional Republic." Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025). Indeed, "[t]he right of American citizens to have their votes properly counted and tabulated, without illegal dilution, is vital to determining the rightful winner of an election." *Id*. Under our Constitution, States "must safeguard American elections in compliance with Federal laws that protect Americans' voting rights and guard against dilution by illegal voting, discrimination, fraud, and other forms of malfeasance and error." *Id*. Without such safeguards, "[v]oter fraud drives honest citizens out of the democratic process and breeds distrust of our government." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). And "[v]oters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Id*.

To prevent fraudulent votes from being cast in federal elections, federal law requires that all states conduct routine list maintenance of their statewide voter registration databases to

1

maintain accurate voter rolls. The Civil Rights Division of the Department of Justice ("Department") is tasked with ensuring that states conduct voter registration list maintenance to prevent the inclusion of ineligible voters on any state's voter registration list for federal elections. This action seeks to remedy the State of New Hampshire's violations of federal voting laws.

Plaintiff, the United States of America ("United States"), brings this action against the State of New Hampshire ("New Hampshire") and David M. Scanlan, in his official capacity as the Secretary of State for the State of New Hampshire ("Secretary Scanlan"), and alleges as follows:

## INTRODUCTION

1. The Attorney General of the United States brings this action to make demand for New Hampshire's statewide voter registration list ("SVRL") pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. §§ 20701-20706.

2. The United States, through the Attorney General of the United States, also files this action to enforce the requirements of Section 303 of the Help America Vote Act ("HAVA"), 52 U.S.C. § 21083, with respect to New Hampshire's refusal to provide its SVRL to the Attorney General and its failure to conduct list maintenance of the SVRL on a regular basis as required by HAVA.

3. On March 25, 2025, President Donald J. Trump signed Executive Order 14248 entitled "Preserving and Protecting the Integrity of American Elections" to ensure that elections are held in compliance with federal laws that guard against illegal voting, unlawful discrimination, and other forms of fraud, error, or suspicion. *See* 90 Fed. Reg. 14005 (Mar. 25, 2025).

4. HAVA requires responsible state and local election officials to "perform list maintenance" with respect to the centralized, computerized statewide voter registration list required under HAVA "on a regular basis…." 52 U.S.C. §§ 21083(a)(1)-(2). Specifically, HAVA mandates that states have "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters," with "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." 52 U.S.C. §§ 21083(a)(4)(A)-(B).

5. Congress gave the Attorney General, through the Civil Rights Division, sole responsibility to enforce the core provisions of HAVA. *See* 52 U.S.C. § 21111.

6. The United States Supreme Court has held that, "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).

7. The United States brings this action pursuant to its authority under the CRA and HAVA to compel New Hampshire and its chief state election official, Secretary Scanlan, to provide information to the Attorney General regarding New Hampshire's voter list maintenance procedures and an electronic copy of its SVRL including all fields, and to come into compliance with the requirements of HAVA.

## **JURISDICTION AND VENUE**

8. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 2201(a); 52 U.S.C. § 21111; and 52 U.S.C. § 20705.

9. Venue for this action is proper in the United States District Court for the District of New Hampshire, pursuant to 28 U.S.C. §§ 109, 1391(b).

## PARTIES

10. Plaintiff United States seeks declaratory and injunctive relief pursuant to Section 401 of HAVA, 52 U.S.C. § 21111, which authorizes the Attorney General to bring a civil action against any state or jurisdiction to enforce the requirements of HAVA Section 303, 52 U.S.C § 21083. Pursuant to 52 U.S.C. § 20701, *et seq.*, the Attorney General may compel states to produce certain records and papers relating to the administration of federal elections.

11. Defendant New Hampshire is a State of the United States of America and is subject to the requirements of HAVA, including the requirements set forth in Section 303 regarding a computerized statewide voter registration list and attending obligations to perform list maintenance for federal elections. 52 U.S.C. §§ 21083, 21141. New Hampshire is also subject to the CRA. 52 U.S.C. § 20706. Every "officer of election" in Federal elections administered by New Hampshire, through its chief elections official, is subject to the record retention and production requirements of the CRA. *See* 52 U.S.C. §§ 20701, 20706.

12. Defendant Secretary Scanlan is the Secretary of State for the State of New Hampshire, and as such, he is the chief state election officer and is responsible for the State's compliance with HAVA, conducting Federal elections in New Hampshire, and overseeing all "officer[s] of election" in Federal elections, as that term is used in Sections 301 and 306 of the CRA, 52 U.S.C. §§ 20701, 20706. *See* N.H. Rev. Stat. § 652:23. Secretary Scanlan is sued in his official capacity only.

## STATUTORY BACKGROUND

A.   **The Civil Rights Act of 1960 ("CRA")**

13.   Congress vested the Attorney General of the United States with the power to request records pursuant to Title III of the CRA, 52 U.S.C. §§ 20701-20706.

14.   Section 301 of the CRA requires state and local election officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of twenty-two months after any federal general, special, or primary election. *See* 52 U.S.C. § 20701.

15.   Section 303 of the CRA provides: "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

B.   **The Help America Vote Act ("HAVA")**

16.   The purpose of HAVA "can be stated very simply—it is to improve our country's election system." H.R. Rep. 107-329(I) at 31 (2001). "Historically, elections in this country have been administered at the state and local level," but Congress found that "[w]hile local control must be preserved, it is time to recognize that the federal government can play a valuable [role] by assisting state and local government in modernizing their election systems." *Id.* at 31-32.

17.   HAVA imposes "minimum requirements" for the conduct of federal elections, which "allow the states to develop their own laws and procedures to fulfill the requirements" to the extent that they are consistent with the standards set by HAVA. *Id.* at 35.

18. HAVA requires all states to implement "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State…." 52 U.S.C. § 21083(a)(1)(A).

19. The computerized list required by HAVA "shall be coordinated with other agency databases within the State." 52 U.S.C. § 21083(a)(1)(A)(iv).

20. HAVA further establishes a "[m]inimum standard for accuracy of State voter registration records…." 52 U.S.C. § 21083(a)(4). Section 303 of the statute provides that a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." 52 U.S.C. § 21083(a)(4)(A)-(B).

21. HAVA mandates that a state may not process a voter registration application without the applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's social security number. 52 U.S.C. § 21083(a)(5)(A)(i). For applicants who have neither a driver's license nor a social security number, a state must assign a unique identifying number for voter registration purposes. 52 U.S.C. § 21083(a)(5)(A)(ii). A state must determine the validity of the information provided by the applicant. 52 U.S.C. § 21083(a)(5)(A)(iii).

22. HAVA also provides specific rules for voters who register to vote by mail. *See* 52 U.S.C. § 21083(b). An individual who registers to vote by mail and has not previously voted in a

federal election must comply with certain identification requirements. *Id.*

23. HAVA applies to all fifty states, including New Hampshire. *See* 52 U.S.C. § 21141.

24. Section 303 of HAVA incorporates by reference certain provisions of the National Voter Registration Act ("NVRA"). *See*, *e.g.*, 52 U.S.C. § 21083(a)(4)(A). Those provisions, unless explicitly noted otherwise, apply to all states covered under HAVA. *See id.*

25. Although New Hampshire is exempt from the NVRA, it is not exempt from provisions of HAVA that require voter registration list maintenance, unless the statute provides a specific carveout. *See generally Colón-Marrero v. Vélez*, 813 F.3d 1, 14 (1st Cir. 2016) (holding that "'a sensible reading' of HAVA section 303(a)(4) compels the conclusion that Congress intended the obligations it sets forth to apply to all jurisdictions within HAVA's definition of 'State,'" and therefore applies to NVRA-exempt jurisdictions) (citations omitted).

26. HAVA contains no private right of action. *See generally* 52 U.S.C. §§ 20901 to 21145; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (same).

27. The Attorney General of the United States is exclusively empowered to bring a civil action pursuant to HAVA "as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under section [303]." 52 U.S.C. § 21111.

## FACTUAL ALLEGATIONS

28. The U.S. Election Administration Commission ("EAC") conducts a biennial Election Administration and Voting Survey ("EAVS"), which it describes as "an analysis of state-by-state data that covers various topics related to the administration of federal elections," including voter registration and list maintenance. EAC, "Election Administration and Voting

7

Survey (EAVS) Comprehensive Report," *available at* https://www.eac.gov/research-and-data/studies-and-reports.

29.     The EAC's most recent report, "Election Administration and Voting Survey 2024 Comprehensive Report: A Report from the U.S. Election Assistance Commission to the 119th Congress" ("2024 EAVS Report"), explains that as part of the 2024 EAVS, the states "reported data on their efforts to keep voter registration lists current and accurate, known as list maintenance," such as the number of confirmation notices states sent "to verify continued eligibility from registered voters," and the number of voter registration records that state removed from their voter lists. EAC, 2024 EAVS Report at iv, *available at* https://www.eac.gov/sites/default/files/2025-07/2024_EAVS_Report_508.pdf.

30.     New Hampshire supplied the requested information to the 2024 EAVS Report.

31.     As part of its enforcement authority of the requirements of HAVA, the Attorney General conducts an intensive review of each state's response to the 2024 EAVS Report. The Attorney General, through assigned Department employees, reviewed New Hampshire's responses.

32.     On June 25, 2025, shortly before the 2024 EAVS Report was released, the United States sent a letter to Secretary Scanlan seeking information regarding New Hampshire's compliance with Section 303 of HAVA, 52 U.S.C. § 21083. Letter of June 25, 2025, from the United States Department of Justice to Secretary Scanlan ("June 25 Letter").

33.     The June 25 Letter made 15 requests targeted at ensuring New Hampshire's compliance with HAVA. *Id.*

34.     For example, request number two asked Secretary Scanlan to describe the process by which New Hampshire uses driver's license numbers and the last four digits of a social

security number for each legally registered voter in New Hampshire as required by HAVA Section 303(a)(1)(A), 52 U.S.C. § 21083(a)(1)(A). June 25 Letter at 1. Relatedly, request number eleven concerns the "verification process" pursuant to HAVA Section 303(a)(5), U.S.C. § 21083(a)(5), "to verify the required information supplied by the registrant" and to explain "what happens to the registration application if the information cannot be verified." *Id.* at 2.

35. Request number 4 asked Secretary Scanlan to explain New Hampshire's process for identifying and removing duplicate voter registrations under HAVA Section 303(a)(2)(B)(iii), 52 U.S.C. § 21083(a)(2)(B)(iii). *Id.* at 1.

36. Duplicate registrations are of particular concern because New Hampshire only identified .1 percent of new registrations as duplicates in the 2024 EAVS Report, whereas the national average was 12.7 percent. The 2024 EAVS Report further identified that New Hampshire only removed .3 percent of registered voters as duplicates when performing list maintenance, whereas the national average was 8.1 percent.

37. Other requests from the United States' June 25 Letter asked Secretary Scanlan to "describe the process by which voters who have been convicted of a felony" are identified and removed from SVRL, June 25 Letter at 2 (request number 5); to "describe the process by which deceased registrants are identified and removed," *id.* (request number 6); to "[d]escribe the process by which voters who have moved outside the State and subsequently register to vote in another state are identified and removed" from the SVRL, pursuant to HAVA Section 303(a)(4)(A), 52 U.S.C. § 21083(a)(4)(A), *id.* (request number 8); and to "[d]escribe the process by which registrants who are ineligible to vote due to non-citizenship are identified and removed" from the SVRL, *id.* (request number 9).

38.     Finally, the June 25 Letter asked for New Hampshire's current SVRL, including both active and inactive voters, to evaluate HAVA compliance. *Id.* (request number 15).

39.     On July 25, 2025, Secretary Scanlan responded to the United States' June 25 Letter. ("Secretary Scanlan's July 25 Response").

40.     Secretary Scanlan prefaced his response by stating that some of the requests in the June 25 Letter "overlap with requirements under" the NVRA, 52 U.S.C. § 20501 *et seq.*, and noted that New Hampshire is exempt from the NVRA. *Id.*

41.     Secretary Scanlan's July 25 Response failed to answer three requests entirely: duplicate registrations (request number 4); verification (request number 11); and requirements for voters registering by mail (request number 14). *Id.* at 3, 7, & 8.

42.     Secretary Scanlan's July 25 Response also did not respond to the inquiry in request 2 asking the State to describe the process by which New Hampshire uses driver's license numbers and the last four digits of a social security number for each legally registered voter in New Hampshire as required by HAVA Section 303(a)(1)(A), 52 U.S.C. § 21083(a)(1)(A). Secretary Scanlan said that the system generates an automatic number for each voter, but that does nothing to explain how New Hampshire complies with HAVA Section 303(a)(1)(A). This is especially concerning when paired with the failure of Secretary Scanlan to answer whether New Hampshire verifies driver's license numbers and the last four digits of the social security numbers.

43.     Similarly, Secretary Scanlan's July 25 Response failed to provide sufficient information to evaluate New Hampshire's compliance with its list maintenance obligations under HAVA Section 303 with respect to registrants with felonies (request number 5), deceased voters

(request number 6), and voters who have moved out of state (request number 8), or are non-citizens (request number 9). *Id.* at 4, 5–6.

44. In response to the request in the June 25 Letter for an electronic copy of the SVRL, Secretary Scanlan replied that state law did not allow him to provide the SVRL to the United States, but that the United States could seek public data from each municipality directly. Secretary Scanlan's July 25 Response at 8 (response to request number 15).

45. On August 18, 2025, the United States sent an additional letter to Secretary Scanlan explaining that the United States sought New Hampshire's SVRL through its authority to enforce HAVA Section 303, citing 52 U.S.C. § 21111 ("August 18 Letter").

46. The August 18 Letter also included a written demand to Defendants for the production of specific election records pursuant to the CRA, as authorized by 52 U.S.C. § 20703. *Id*. The letter explained that the purpose of the request "is to ascertain New Hampshire's compliance with the list maintenance requirements of HAVA." *Id*.

47. The August 18 Letter specified that the SVRL to be produced by the Defendants must "include all fields, including all identifiers, including the registrant's full name, date of birth, residential address, and the last four numbers of each registrant's social security number and the full state driver's license number, as required by HAVA at 52 U.S.C. § 21083(a)(5)(A)(i)."

48. The August 18 Letter also informed Secretary Scanlan that "HAVA specifies that the last 4 digits of a social security number shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974." *Id.* (citations omitted).

49. In addition, the August 18 Letter informed Secretary Scanlan that any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified

11

at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority. *Id.*

50. The August 18 Letter also stated that in charging the Attorney General with enforcement of the voter list maintenance requirements in the HAVA, Congress plainly intended that the Justice Department be able to conduct an independent review of each state's list. *Id.*

51. Finally, the August 18 Letter informed Secretary Scanlan to the extent that he claimed state law prohibits him from providing this information, that is incorrect. If the federal voting laws and state law "do not operate harmoniously in a single procedural scheme for federal voter registration, then Congress has exercised its power to 'alter' the state's regulation, and that regulation is superseded." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc.* ("*ITCA*"), 570 U.S. 1 (2013).

52. On August 28, 2025, Secretary Scanlan sent a letter in response to the August 18 Letter ("Secretary Scanlan's August 28 Response"). In it, he reiterated his belief that New Hampshire law prohibits the disclosure of the SVRL and that, in his view, no provision of federal law compels the production of the SVRL. *Id.* Secretary Scanlan again directed the United States to each municipality's most recent public data. *Id.*

53. Secretary Scanlan's July 25 Response and Secretary Scanlan's August 28 Response refusing to provide the SVRL hinder the United States from fully evaluating New Hampshire's compliance with HAVA Section 303, 52 U.S.C. § 21083.

54. Controlling authority in the First Circuit provides that HAVA's list maintenance requirements apply to even the NVRA-exempt states like New Hampshire. *See Colón-Marrero*, 813 F.3d at 14.

## CAUSES OF ACTION

### COUNT I:   CIVIL RIGHTS ACT OF 1960, 52 U.S.C. § 20703

55. The United States restates and incorporates herein the allegations in the foregoing paragraphs of the Complaint.

56. The CRA, 52 U.S.C. §§ 20701-20706, provides the United States authority to obtain the records and information requested in its June 25 Letter and its August 18 Letter.

57. The Department's August 18 Letter requested an electronic copy of New Hampshire's computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, their State driver's license number, and the last four digits of their social security number pursuant to the CRA stating its purpose to enforce HAVA, as authorized by 52 U.S.C. § 20703.

58. Secretary Scanlan's August 28 Response refused to provide the records requested in violation of the CRA. *See* 52 U.S.C. §§ 20701-20706.

59. Unless and until ordered to do so by this Court, Defendants' refusal to provide these records as requested constitutes a continuing violation of federal law.

### COUNT II:   HELP AMERICA VOTE ACT, 52 U.S.C. § 21083

60. The United States restates and incorporates herein the allegations in the foregoing paragraphs of the Complaint.

61. Defendants, acting through Secretary Scanlan as New Hampshire's chief elections official, have failed to take actions required to comply with HAVA Section 303. These failures include, but are not limited to, the following:

    a. Defendants' failure to provide sufficient information in response to requests made in the United States' June 25 Letter and August 18 Letter to fully evaluate New Hampshire's compliance with HAVA, pursuant to its statutory enforcement

authority, 52 U.S.C. § 21111.

      b.      Defendants' failure to conduct list maintenance of New Hampshire's SVRL "in a manner that ensures that… duplicate names are eliminated from the computerized list" pursuant to HAVA Section 303(a)(2)(B), 52 U.S.C. § 21083(a)(2)(B).

      c.      Defendants' refusal to provide to the United States the current electronic copy of New Hampshire's computerized, statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their State driver's license number or the last four digits of their social security number, prevents the Attorney General from determining New Hampshire's compliance with the list maintenance requirements of HAVA, 52 U.S.C. § 21083(a)(5)(A).

      d.      Defendants' failure to respond to whether New Hampshire has a process—and uses it—to validate driver's license numbers and the last four digits of social security numbers when an applicant submits a voter registration application, also explains why the United States needs the unredacted data to determine compliance with 52 U.S.C. § 21083(a)(5)(A)(iii).

      e.      Defendants' failure to incorporate into New Hampshire's "election system… provisions to ensure that voter registration records in the State are accurate and are updated regularly" including a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote" pursuant to HAVA Section 303(a)(4), 52 U.S.C. § 21083(a)(4), particularly in regard to removing:

          i.    duplicate names from the SVRL;

          ii.    the names of registrants convicted of felonies;

          iii.    the names of registrants who are deceased; and

    iv. the names of people ineligible to vote due to non-citizenship.

  f. Defendants' failure to follow the provisions of HAVA Section 303(b) governing requirements for voters who register by mail. 52 U.S.C. § 21083(b).

  g. Defendants' refusal to provide to the United States a copy of its SVRL, including active and inactive voters and containing all fields, which includes the registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of the registrant's social security number, as required by HAVA Section 303(a)(5)(A), 52 U.S.C. § 21083(a)(5)(A).

### PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that this Court:

1. Declare that Defendants' refusal to provide registration records and New Hampshire's electronic statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, their state driver's license number, and the last four digits of their social security number, upon a demand by the Attorney General violates Title III of the CRA. 52 U.S.C. § 20703.

2. Declare that Defendants Secretary Scanlan and New Hampshire are not in compliance with the requirements of HAVA Section 303, particularly with respect to their obligations to perform list maintenance of New Hampshire's computerized statewide voter registration list and to have provisions in New Hampshire's election system to ensure its voter registration records are accurate and updated regularly. 52 U.S.C. § 21083.

3. Declare that any state law that prohibits Secretary Scanlan from providing the requested statewide voter registration list (SVRL) is preempted by federal law.

4.  Order the Defendants to provide to the United States New Hampshire's current statewide voter registration list, including active and inactive voters and containing all fields, including the registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of their social security number, as required by the CRA, 52 U.S.C. §§ 20701-20706, and HAVA Section 303(a)(5)(A), 52 U.S.C. § 21083(a)(5)(A).

5.  Any other relief this Court deems just and proper.

DATED: September 25, 2025          Respectfully submitted,

>   HARMEET K. DHILLON
>   Assistant Attorney General
>   Civil Rights Division
>
>   MICHAEL E. GATES (CA Bar No. 258446)
>   Deputy Assistant Attorney General
>   Civil Rights Division
>
>   */s/ James Thomas Tucker*
>   MAUREEN S. RIORDAN (NY Bar No. 205880)
>   TIMOTHY F. MELLETT (DC Bar No. 430968)
>   JAMES THOMAS TUCKER (DC Bar No. 90010157)
>   BRITTANY E. BENNETT (GA Bar No. 717377)
>   Trial Attorneys, Voting Section
>   Civil Rights Division
>   4 Constitution Square
>   150 M Street NE, Room 8.141
>   Washington, D.C. 20002
>   Maureen.Riordan2@usdoj.gov
>   Timothy.F.Mellett@usdoj.gov
>   James.T.Tucker@usdoj.gov
>   Brittany.Bennett@usdoj.gov
>   Tel. (202) 307-2767
>   Attorneys for the United States

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ James Thomas Tucker*
James Thomas Tucker