# EXHIBIT B

| | |
|---|---|
| United States of America,<br><br>*Plaintiff*,<br>v.<br><br>DAVID M. SCANLAN in his official capacity as Secretary of State for the State of New Hampshire, and the STATE OF NEW HAMPSHIRE,<br><br>*Defendants*. | Case No. 1:25-cv-00371-AJ<br><br>DECLARATION OF NEAL KURK |

## DECLARATION OF NEAL KURK

1. I am a U.S. citizen, over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2. I am a resident of, and am registered to vote in, Weare, New Hampshire.

3. I previously spent more than three decades as a Republican Party member of the New Hampshire State House of Representatives, serving from 1986 to 2018. I represented the Hillsborough 2 District, which is comprised of Weare and Deering. Among other committee assignments, I was Chair of the House Finance Committee for many years. In that capacity, I was responsible for reviewing legislation that had any fiscal impact on the state of New Hampshire, including election laws.

4. During my time in public office, I was a staunch advocate for the privacy rights of New Hampshire residents. In 2018, I was the primary sponsor of a state constitutional amendment that enshrined an express right to privacy in New Hampshire. It states, "An individual's right to live free from governmental intrusion in private or personal information is natural, essential, and

inherent." I sponsored this amendment to ensure that every New Hampshire resident has control over their private information. This amendment was especially meant to improve privacy protections in the information age. Given the growing volume of digital information available on each of us, I believed it was necessary to expand privacy protections beyond the traditional protections against unreasonable searches and seizures on papers and effects. I am proud that New Hampshirites agreed with me: the amendment was approved by over 80 percent of New Hampshire voters.

5. I recently co-authorized a Syracuse Law Review article with Albert Scherr, a University of New Hampshire law professor with whom I co-authorized the privacy amendment to the New Hampshire Constitution. As we explained in the article, this amendment to the New Hampshire Constitution "is a statement of principle about information privacy for the present and the future" and reflects a deeply held belief among New Hampshire residents about their right "to be left alone" and "in control of their personal information in the first instance." Albert Scherr & Neal Kurk, *A New State Constitutional Right to Information Privacy: The Origins Speak*, 75 Syracuse L. Rev. 837, 861 (2025).

6. In addition to our state's constitutional amendment, I was also involved in the drafting and passage of New Hampshire's election law that protects private voter information. Under statute, the state voter database "shall be private and confidential." RSA 654:45(VI). The gist of this statute is to ensure that information surrendered by private individuals for the purpose of voter registration is used for that purpose—and that purpose only. Local election officials may need to compile birth dates, for example, but I do not believe this is information that anyone—government included—needs for purposes other than voter registration.

7. I have also previously participated in litigation to defend the privacy rights of New

Hampshire voters. During President Trump's first term in office, he convened the Presidential Advisory Commission on Election Integrity, which sought personal information about nearly one million registered New Hampshire voters. This request—like the present—trampled the privacy rights of New Hampshire voters. To that end, I served as a plaintiff in *Lasky v. Gardner*, a suit filed New Hampshire Superior Court. The suit was ultimately resolved when New Hampshire's then-Secretary of State agreed to restrict the information made available to the President's commission.

8. I am extremely proud of my work protecting the privacy of voter information during my time in the legislature and strongly value the privacy of my own personal information.

9. I understand that the Department of Justice has recently sued New Hampshire and our Secretary of State in order to obtain complete, unredacted voter registration history of all voters in the state, including their driver's license numbers, partial social security numbers, and dates of birth. This demand flagrantly disregards the constitutional and statutory rights of New Hampshire voters, which I worked hard to enact during my time in the legislature.

10. If the Department of Justice is successful in obtaining this information, it will harm me personally as a New Hampshire voter who does not wish for his information to be disclosed to the federal government, particularly since New Hampshire law specifically protects this information.

11. Moreover, the Justice Department's efforts undercut the very privacy rights I sought to protect as a legislator. The New Hampshire Constitution's right to privacy was the culmination of years of work. My constituents prized their privacy and shared my view that we should have control over our own personal, private information. I believe the same goes for the rest of New Hampshire—that is why they passed Article 2-b by an overwhelming majority.

12. The federal government's top-down assault on New Hampshire's privacy laws will also undermine the faith that voters have in our electoral system. In my experience, New Hampshire's strong protections for voter information are critical to encouraging individuals to exercise their right to vote. New Hampshire's privacy laws are vital for a healthy democracy. For voters to confidently participate in the electoral process, they must rest assured that they can live and vote free without the personal identifying information they give to election officials being used for unauthorized purposes. No one—stranger, state government, or federal government—needs to know your birthdate simply because you chose to vote. I am therefore deeply concerned that the threat of disclosure will deter qualified citizens in New Hampshire from registering to vote and, ultimately, accessing the polls to exercise their right to vote.

13. Finally, I have grave doubts that the Justice Department will adhere to proper privacy safeguards and laws if it does obtain New Hampshire's voter registration list. I have been deeply concerned by public reporting noting that DOGE compromised the privacy of Social Security numbers for millions of Americans. Similarly, I have been concerned by other reports of federal agencies improperly sharing personal information between agencies. As explained, I am strong believer that, when a private citizen surrenders personal information to the government for a specific purpose, those citizens should be able to trust that their information will be used for no other purpose. The federal government does not seem committed to that principle.

14. I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 9/30/2025

Neal Kurk