UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO: 1:25-cv-00371-AJ |
| Plaintiff, | |
| v. | **OPPOSITION TO MOTION TO INTERVENE** |
| DAVID M. SCANLAN in his official capacity as Secretary of State for the State of New Hampshire, and the STATE OF NEW HAMPSHIRE, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE BY ROBERT "BOB" PERRY, LOUISE SPENCER, AND CHRISTOPHER COLE (DOC. 6)**

# TABLE OF CONTENTS

BACKGROUND……………………………………………………………………..5

LEGAL STANDARDS…………………………………………………………....7

ARGUMENT………………………………………………………………...8

I.    THE PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR INTERVENTION AS OF RIGHT……………………………………………...8

A.    The Proposed Intervenors Have No Interest in This Action…………...........................8

1.    Proposed Intervenors Have No Interest In This Matter Because HAVA and the CRA Confer No Private Right of Action and Limit Defendants to Responsible Government Officials.................................................…………...............................................9

2.    The Complaint and Statutory Language Refute Proposed Intervenors' Speculation that Voter Information is at Risk of Improper Disclosure in This Action……………….…………….…………….………….…………….…………….…...13

3.    Proposed Intervenors' Interest in Protecting Members Who are Voters Fails to Show a Particularized Harm Differing from Any Other Members of the Public.…………………………….………….………………………….………………....15

B.    Proposed Intervenors Cannot Show an Interest That May Be Impaired by the Disposition of this Action……………………………………….....................................................17

C.    Proposed Intervenors Cannot Show Inadequate Representation by the State Government Defendants.………………………………….………………………………18

II.    PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR PERMISSIVE INTERVENTION……………………………………………………...19

CONCLUSION...……………………………………………………………...20

# TABLE OF AUTHORITIES

**Cases**

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541 (1st Cir. 2006)......................... 17

*Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008).................................................. 10

*Coal. for Open Democracy v. Scanlan,* No. 24-CV-312-SE, 2025 WL 1503937 appeal docketed, No. 25-1585 (1st Cir. June 17, 2025) .................................................................................. 16

*Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31 (1st Cir. 2000) .......................... 8

*Daggett v. Comm'n on Governmental Ethics & Election Pracs., 172 F.3d 104 (1st Cir. 1999)*.. 19

*Diamond v. Charles*, 476 U.S. 54 (1986) ................................................................... 8

*Donaldson v. United States*, 400 U.S. 517 (1971) ......................................................... 8

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ............................................................. 10

*Laube v. Campbell*, 215 F.R.D. 655 (M.D. Ala. 2003)................................................... 15

*League of Women Voters v. Va. State Bd. Of Elections* 458 F. Supp. 3d 460 (W.D. Va. 2020) .. 16

*Maine v. Norton*, 203 F.R.D. 22 (D. Me. 2001)........................................................... 19

*ManaSota–88, Inc. v. Tidwell*, 896 F.2d 1318 (11th Cir. 1990) .......................................... 15

*Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 721 F. Supp. 775 (E.D. Va. 1989)............................................................................................ 15

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981)..................... 12

*Moosehead Sanitary Dist. v. S. G. Phillips Corp*., 610 F.2d 49 (1st Cir. 1979).......................... 18

*Pub. Serv. Co. of New Hampshire* v. *Patch*, 136 F.3d 197 (1st Cir. 1998) .............................. 9, 18

*Stallworth v. Monsanto Co*., 558 F.2d 257 (5th Cir. 1977) .............................................. 16

*Resort Timeshare Resales Inc. v. Stuart*, 764 F. Supp. 1465, 1499 (S.D. Fla. 1991)...............16

*T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33 (1st Cir. 2020) ............................... passim

*Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) ...................................... 12

*United States v. Alabama*, No. 2:06-CV-392-WKW, 2006 WL 2290726 (M.D. Ala. ................. 13

3

*United States v. N. C. Bd. of Elections*, No. 5:25-cv-00283-M-RJ, at 12 (E.D.N.C. Sept. 8, 2025) ............................................................................................................................... 14

*Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556 (1st Cir. 2021) ............................................. 8, 9, 18

**Statutes**

5 U.S.C. § 552 ......................................................................................................................... 14

52 U.S.C. § 20701 ................................................................................................................... 11

52 U.S.C. § 20703 ................................................................................................................... 11

52 U.S.C. § 20705 ................................................................................................................... 11

52 U.S.C. § 20706 ................................................................................................................... 12

52 U.S.C. § 21083(a) ......................................................................................................... passim

52 U.S.C. § 21111 ................................................................................................................. 9, 10

52 U.S.C. § 21112 ................................................................................................................... 10

52 U.S.C. §§ 20701-20706 ................................................................................................... 5, 14

Pub. L. No. 107-252, 116 Stat. 1666 ...................................................................................... 10

**Rules**

Fed. R. Civ. P. 24 ............................................................................................................... passim

**Legislative Materials**

148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002) .................................................................. 10

H.R. Rep. No. 107-329(I) .......................................................................................................... 5

**Secondary Materials**

U.S. Election Assistance Comm'n, About the EAC, https://www.eac.gov/about .......................... 6

U.S. Election Assistance Comm'n, Election Administration and Voting Survey

  (June 2025)............................................................................................................................. 6

U.S. Dep't of Just., Voting Section Litigation, https://www.justice.gov/crt/voting- ...................... 6

**BACKGROUND**

This is a straightforward case brought by the Attorney General of the United States to enforce the requirements of three complimentary Federal statutes governing voter registration and voting records pertaining to Federal elections. The Civil Rights Act of 1960 ("CRA") requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any Federal office for a period of twenty-two months after any Federal election, and to produce those records to the Attorney General upon request. See 52 U.S.C. §§ 20701-20706.

The purpose of the Help America Vote Act of 2002 ("HAVA") "is to improve our country's election system" by recognizing "the federal government can play a valuable [role] by assisting state and local government in modernizing their election systems." H.R. Rep. No. 107-329(I) at 31-32 (2001). HAVA imposes "minimum requirements" for the conduct of Federal elections. *Id.* at 35. Specifically, all states are required to implement "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level" that contains "the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State…" 52 U.S.C. § 21083(a)(1)(A). Section 303 of HAVA provides that a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters," among other requirements. 52 U.S.C. § 21083(a)(4).

The United States, acting through the Attorney General, routinely investigates state compliance with the list maintenance requirements for Federal elections.[1] In both Democratic

---

[1] The National Voter Registration Act of 1993 ("NVRA") also provides that election officials "ensure that accurate and current voter registration rolls are maintained" for Federal elections. 52 U.S.C. § 20501(b)(4). New Hampshire is exempt from the NVRA.

and Republican administrations, the Attorney General has pursued enforcement actions against state and local governments and their officials when their efforts to maintain accurate voter rolls for Federal elections have fallen short of Federal requirements.[2]  Identification of noncompliant states is accomplished, in part, by reviewing the biennial Election Administration and Voting Survey ("EAVS") report prepared by the U.S. Election Assistance Commission ("EAC"), "an independent, bipartisan commission whose mission is to help election officials improve the administration of elections and help Americans participate in the voting process."[3]  New Hampshire, like other states, provided the EAC with the voter registration and list maintenance data included in the EAVS report.

The 2024 EAVS Report, which was published in June 2025, revealed several anomalies in New Hampshire voter registration data that are inconsistent with reasonable list maintenance efforts. For example, New Hampshire only identified 0.1 percent of new registrations as duplicates in the 2024 EAVS Report, whereas the national average was 12.7 percent. The 2024 EAVS Report further identified that New Hampshire only removed 0.3 percent of registered voters as duplicates when performing list maintenance, whereas the national average was 8.1 percent. Taken together, the data that New Hampshire reported to the EAC raised several red flags that necessitated further investigation.

On June 25, 2025, shortly before the 2024 EAVS Report was released, the United States sent a letter to Secretary Scanlan seeking information regarding New Hampshire's compliance with Section 303 of HAVA, 52 U.S.C. § 21083, and to produce its complete voter registration list to include the HAVA identifying numbers. Compl. ¶ 32. On July 25, 2025, Secretary Scanlan responded to the United States' June 25 Letter. ("Secretary Scanlan's July 25 Response"). *Id.* ¶ 39. Secretary Scanlan's July 25 Response failed to provide sufficient information to evaluate

---

[2] A list of HAVA and NVRA enforcement actions brought by the U.S. Department of Justice's Voting Section is available at https://www.justice.gov/crt/voting-section-litigation.

[3] EAC website, "About the EAC," https://www.eac.gov/about (last visited December 3, 2025).

New Hampshire's compliance with its list maintenance obligations under HAVA Section 303 with respect to registrants with felonies (request number 5), deceased voters (request number 6), and voters who have moved out of state (request number 8), or are non-citizens (request number 9). *Id*. ¶ 43. In response to the request in the June 25 Letter for an electronic copy of the SVRL, Secretary Scanlan replied that state law did not allow him to provide the SVRL to the United States, but that the United States could seek public data from each municipality directly. *Id*. ¶ 44.

On September 30, 2025, the Proposed Intervenors, Neal Kurk, Robert "Bob" Perry, Louise Spencer, and Christopher Cole, filed their Motion to Intervene. Doc. 6. Proposed Intervenors have failed to establish sufficient grounds for intervention, lack standing under controlling authority, and have failed to make the necessary very compelling showing of inadequate representation by the governmental Defendants.

Proposed Intervenors present only a generalized interest in preventing the United States from obtaining relief from Defendants' violations of Federal law and offer only a speculative basis for intervention that fails to articulate any concrete grievance or interest that has been or may be violated. Proposed Intervenors have failed to meet their burden of demonstrating that they meet the standards for intervention as of right, as set forth in Federal Rule of Civil Procedure 24(a), or for permissive intervention, as set forth in Federal Rule of Civil Procedure 24(b). For the reasons specified below, the Proposed Intervenors' motion should be denied.

## LEGAL STANDARDS

The Civil Rules establish two modes of intervention: intervention as of right, Fed. R. Civ. P. 24(a), and permissive intervention, Fed. R. Civ. P. 24(b). *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 36 (1st Cir. 2020). To prevail on a motion for intervention as of right, "a putative intervenor must demonstrate (1) the timeliness of her motion; (2) a concrete interest in the pending action; (3) 'a realistic threat' that resolution of the pending action will hinder her ability to effectuate that interest; and (4) the absence of adequate representation by any existing party." Id. at 39 (internal citations omitted). "It is black letter law that a failure to satisfy any one of these four requirements sounds the death knell for a motion to intervene as of right." *Id*. When

the movant seeks to intervene as a defendant alongside a government entity—here, New Hampshire—the burden of persuasion is heightened. *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021). In those circumstances, the United States Court of Appeals for the First Circuit and a number of other courts "start with a rebuttable presumption that the government will defend adequately its action." *Id*. (quoting *Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 35 (1st Cir. 2000). A successful rebuttal requires a strong affirmative showing that the agency (or its members) is not fairly representing the applicants' interests. *Id*. (citations omitted).

Under Rule 24(b), a district court may, in its discretion, allow the intervention of any party who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Under this standard, Proposed intervenors "must offer some persuasive reason as to why the district court abused its discretion in denying intervention." *T-Mobile,* 969 F.3d at 40. Importantly, [a] district court considering requests for permissive intervention should ordinarily give weight to whether the original parties to the action adequately represent the interests of the putative intervenors." *Id.* at 41.

Proposed Intervenors fail to meet either standard for intervention.

## <u>ARGUMENT</u>

## I.    THE PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR INTERVENTION AS OF RIGHT.

### A.    The Proposed Intervenors Have No Interest in This Action.

To support intervention, the intervenor's interest must be a particularized and legally protected interest rather than a general grievance. *See* Fed. R. Civ. P. 24(a)(2). That necessitates "a significantly protectable interest," *Donaldson v. United States*, 400 U.S. 517, 531 (1971), requiring that the intervenor establish the legal right to bring or defend the claim before the district court as a plaintiff or defendant. *See generally Diamond v. Charles*, 476 U.S. 54, 66–67 (1986) ("Article III requires more than a desire to vindicate value interests. It requires an 'injury in fact' that distinguishes "'a person with a direct stake in the outcome of a litigation—even

8

though small—from a person with a mere interest in the problem.'"). The intervenor "must produce some tangible basis to support a claim of purported inadequacy." *Victim Rts. L. Ctr.*, 988 F.3d at 561 (1st Cir. 2021) (citing *Pub. Serv. Co. of New Hampshire* v. *Patch*, 136 F.3d 197, 207 (1st Cir. 1998)).

Furthermore, "the burden of persuasion is ratcheted upward" when the movant seeks to intervene as a defendant alongside a government entity. *Victim Rts. L. Ctr.*, 988 F.3d at 561. Proposed Intervenors cannot meet that burden for three reasons: neither HAVA nor the CRA confers a right for private organizations or individuals to be party plaintiffs or defendants in this action; Federal law expressly refutes their speculative concern that the privacy of voter information will not be protected; and they have failed to identify any particularized harm that differs from that of any other member of the public.

1. <u>Proposed Intervenors Have No Interest in This Matter Because HAVA and the CRA Confer No Private Right of Action and Limit Defendants to Responsible Government Officials.</u>

Proposed Intervenors can neither bring nor defend a claim under HAVA or the CRA. Neither HAVA nor the CRA create a private right of action. Turning first to HAVA, the only enforcement provision in the Act authorizing a cause of action in Federal court is found at Section 401, which provides that:

> The *Attorney General* may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order) as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, 21083, and 21083a of this title [Sections 301, 302, 303, and 303a of HAVA].

52 U.S.C. § 21111 (emphasis added).

Aside from that right of action, granted exclusively to the Attorney General of the United States, no other explicit right of action in Federal court exists to enforce the provisions of HAVA. The clear text of the statute is reinforced by its legislative history. Senator Dodd of Connecticut – a HAVA conferee and sponsor – openly lamented the lack of a private right of action in HAVA,

observing that such participation was limited to the participation through the Act's administrative hearing process in Section 402 of the Act, 52 U.S.C. § 21112:

> While I would have preferred that we extend the private right of action afforded private parties under [the] NVRA, the House simply would not entertain such an enforcement provision[]. Nor would they accept Federal judicial review of any adverse decision by a State administrative body. However, the state-based administrative procedure must meet basic due process requirements and afford an aggrieved party a hearing on the record if they so choose.

148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002).

Consequently, private parties may not bring Section 303 or make requests for records under that provision. *See Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (per curium) ("Respondents, however, are not sufficiently likely to prevail on the question whether Congress has authorized the District Court to enforce § 303 in an action brought by a private litigant to justify the issuance of a TRO."); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002) (explaining that where "the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit").

HAVA's text likewise limits who may be a defendant. As HAVA's preamble makes clear, the provisions of Title III of the Act "establish minimum election administration standards for States and units of local government … responsibl[e] for the administration of Federal elections." Pub. L. No. 107-252, 116 Stat. 1666. Proper party defendants in a Section 303 enforcement action therefore are limited to "any State or jurisdiction." 52 U.S.C. § 21111. Under Section 303(a), "State or jurisdiction" includes their election officials who are responsible for implementing the statutory mandates. *See*, *e.g.*, 52 U.S.C. § 21083(a)(1)(A) (*"[E]ach State, acting through the chief State election official*, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list…."*) (emphasis added); 52 U.S.C. § 21083(a)(1)(A)(vi) ("All voter registration information obtained by *any local election official in the State* shall be electronically entered into the computerized list on an expedited basis at the time the information is provided to the local official….") (emphasis added); 52 U.S.C. § 21083(a)(5)(A)(i) ("an application for voter

registration for an election for Federal office may not be accepted or processed by a *State* unless the application includes" the identifying number required by Section 303) (emphasis added); 52 U.S.C. § 21083(a)(5)(A)(ii) ("... *the State* shall assign the applicant a number which will serve to identify the applicant for voter registration purposes...") (emphasis added); 52 U.S.C. § 21083(a)(5)(A)(iii) ("*The State* shall determine whether the information provided by an individual is sufficient to meet the requirements of this subparagraph, in accordance with State law.") (emphasis added). Section 303 of HAVA regulates election administrators responsible for timely updating New Hampshire's computerized statewide voter registration list for Federal offices; the State and those officials are the only valid defendants.

The CRA has limitations on parties that parallel those included in HAVA. Title III of the CRA provides that only the Attorney General of the United States may bring an action in Federal court to enforce the Act's provisions for retaining and producing election records upon request. *See* 52 U.S.C. § 20703 (providing that "upon demand in writing by the *Attorney General*" "[a]ny record or paper required by section 301" shall be "made available for inspection, reproduction, and copying...") (emphasis added); *see also* 52 U.S.C. § 20705 (providing that the United States District Court for the district in which the Attorney General has made the demand "shall have jurisdiction" over any litigation to compel production of the covered records).

Like HAVA, the CRA limits defendants to certain election officials. Section 301 of the CRA applies to "*[e]very officer of election*" who must "maintain and preserve, for a period of twenty-two months from the date of any general, special, or primary election" for Federal office "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election..." 52 U.S.C. § 20701 (emphasis added). Section 306 of the CRA makes this explicit, defining the term "officer of election" as "any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax,

11

or other act requisite to voting" in any Federal election. 52 U.S.C. § 20706.

Proposed Intervenors do not contend, and cannot establish, that they have any responsibilities for voter list maintenance under Section 303 of HAVA or that they are required to maintain and produce voter registration records under Sections 301 or 306 of the CRA. Rather, they assert only that they are individuals that perform voter engagement, assisted with legislation, and education for some voters and seek to maintain the privacy of voters they claim to represent. *See* Doc. 6 at 1. While these may be noble interests, they fall well outside the clear language of the parties covered under the provisions of HAVA and the CRA that the Attorney General is enforcing in this action.

"In the absence of strong indicia of a contrary congressional intent," the Supreme Court has stated, "we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981). "Where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). Congress specifically limited the parties in litigation over HAVA's computerized statewide voter registration list requirements and over voter registration records covered by Title III of the CRA to the Attorney General of the United States to enforce the provisions, and States, jurisdictions, and their responsible election officials, as defendants. Consequently, Proposed Intervenors are foreclosed from intervening as a party, including in the role of a defendant.

Although case law interpreting the CRA is scarce, several decisions under HAVA reject intervention by individuals or groups not included in the statutory text. Federal courts have not permitted intervention by private parties and even for some election boards in previous Section 303 enforcement actions brought by the Attorney General. In *United States v. Alabama*, the Chairs of the Alabama Democratic Executive Committee and the Alabama Democratic Conference moved to intervene for the purpose of suggesting special masters to remedy the Section 303 violation. No. 2:06-CV-392-WKW, 2006 WL 2290726, at *1 (M.D. Ala. Aug. 8, 2006). The court denied their motions, concluding that "HAVA does not confer a private right

of action. Congress granted explicitly to the Attorney General of the United States the right of enforcement of Sections 301, 302, and 303 of HAVA." Id. at *4. Therefore, the court found that the proposed intervenors did not have a "legally protectable" interest under HAVA and denied their motion. *Id*. Similarly, in *United States v. New York State Board of Elections*, the district court denied motions to intervene as defendants by the Nassau County Board of Elections and the Nassau County Legislature, despite both having some responsibilities under HAVA for administering the State's computerized statewide voter registration list. *See* 312 Fed. App'x 353 (2d Cir. 2008).

Here, the Proposed Intervenors are individuals that say they are concerned about privacy, however, none of the Proposed Intervenors bear responsibility for implementing the requirements of HAVA or the CRA. None of the Proposed Intervenors or the other members of their community fall within the plain language of HAVA or the CRA, in which Congress clearly articulated who may be parties to enforcement actions, whether as plaintiffs or as defendants. As such, Proposed Intervenors have no legally protectable interest and are not entitled to intervene as of right.

      2.    <u>The Complaint and Statutory Language Refute Proposed Intervenors' Speculation that Voter Information is at Risk of Improper Disclosure in This Action.</u>

Even if this Court were to consider Proposed Intervenors speculative concerns about the privacy of data that voters have already submitted to state election officials, those concerns are completely unfounded. The United States' requests in this matter are authorized by Congress. The Complaint states very clearly that the United States is seeking relief in this litigation that is narrowly focused on obtaining records under the CRA and bringing Defendants into compliance with the list maintenance requirements of HAVA for Federal elections. Specifically, the Complaint requests, *inter alia*, that the Court "order Defendants to provide to the United States the current electronic copy of New Hampshire computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either

their state driver's license number, or the last four digits of their Social Security number and original and completed voter registration applications as required by the CRA, 52 U.S.C. §§ 20701-20706, and HAVA Section 303(a)(5)(A), 52 U.S.C. § 21083(a)(5)(A)." Compl. at 16, Doc. 1. The requested relief encompasses the requirements pursuant to each relevant statute, and goes no further, to ensure and enforce compliance.

The Proposed Intervenors' alleged injury—fear that voter data may be misused or chill voter engagement from the community—is not concrete or imminent, but hypothetical and baseless. The information at issue is already subject to extensive statutory protections under Federal law. The litigation concerns whether certain information must be disclosed to the Attorney General to facilitate enforcement of Federal law including list maintenance requirements—not whether that information will be made public, nor whether any party to this case intends to misuse such data.

One of the law firms representing the Proposed Intervenors in this case made similar alarmist arguments about the Attorney General's enforcement of Section 303 of HAVA in North Carolina. There, the Federal court denied the motions to intervene when those arguments objectively proved to be unfounded.[4] *See* Consent Judgment and Order, *United States v. N. C. Bd. of Elections*, No. 5:25-cv-00283-M-RJ, at 12 (E.D.N.C. Sept. 8, 2025), attached hereto as Exhibit 1. Notably, the consent order there made clear that: "All records and data received by the United States from the State Board Defendants will be kept securely and treated consistently with the Privacy Act, 5 U.S.C. § 552a, *et seq*. To the extent confidential records or data is requested, the State Board Defendants reserve the right to seek a protective order from the court." *Id.* Therefore, in that case, as in this one, the United States has made clear it will protect voter information provided by the state consistent with the requirements of the Privacy Act, the CRA, and other applicable Federal law. The remedial order the United States requests can readily make

---

[4] Two of the groups of proposed intervenors in that case have filed motions for reconsideration, which were pending when the case was stayed due to the Federal government shutdown.

that clear. As a result, like in North Carolina, the alarmist harms that the Proposed Intervenors decry cannot and will not materialize.

Moreover, speculative injury "does not rise to the level required for intervention as a matter of right." *Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 721 F. Supp. 775, 779 (E.D. Va. 1989); *see also Laube v. Campbell*, 215 F.R.D. 655, 657 (M.D. Ala. 2003) ("Interests that are contingent upon some future events and which are 'purely a matter of speculation' are not 'the kind of protectable interest … necessary to support intervention as of right.'") (quoting *ManaSota–88, Inc. v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir. 1990)). Even if Proposed Intervenors had a legally protectable interest in this case under the CRA or HAVA, which they do not, their concern about an alleged misuse of voter information is imagined, speculative, and not going to occur because it is contrary to Federal law and can be readily addressed by the Court through an order like the one entered in the North Carolina consent judgment and order.

3. <u>Proposed Intervenors' Interest in Protecting Members Who are Voters Fails to Show a Particularized Harm Differing from Any Other Members of the Public.</u>

Proposed Intervenors next argue that "Proposed Intervenors' personal information is placed in jeopardy by DOJ's demands" Doc. 6 at 8. In support, Proposed Intervenors rely on speculative declarations claiming fear of misuse and contentions unrelated to this litigation expressing "unease about publicly opposing legislation supported by the current administration, out of fear that it will expose them to scrutiny or retaliation." Spencer Decl. ¶¶ 8-9, Cole Decl. ¶¶ 7, 9–12. Proposed Intervenors' alarmist assertions, which as explained above have no merit and distract from the straightforward records claims brought by the Attorney General pursuant to enforcement powers conferred by Congress.

Furthermore, Proposed Intervenors' argument ignores that Federal agencies routinely are provided and maintain the same data being sought in this action.   Individuals routinely share sensitive personal information—such as Social Security numbers, dates of birth, income,

education, immigration status, and addresses—with Federal agencies like the IRS (for tax filing and refunds), SSA (for Social Security benefits), HHS (for Medicaid and Medicare), Department of Education (for Federal student aid), State Department (for passports), Selective Service (for draft registration), and the Census Bureau (for Federally mandated surveys used for representation and funding allocation). They do so without filing litigation to stop agencies from performing congressionally mandated functions such as the list maintenance enforcement powers assigned to the Attorney General. Moreover, counsel for the Proposed Intervenors recently obtained through litigation a more extensive SVRL than the one that the Attorney General, who has exclusive authority to enforce the CRA and HAVA, has requested here. *See Coal. for Open Democracy*, 2025 WL 1503937, at *2.

District courts routinely deny motions to intervene, even in cases unlike this one where the individual right to vote is implicated. Courts have held that "Rule 24 is designed 'to foster economy of judicial administration.'" *Resort Timeshare Resales Inc. v. Stuart*, 764 F. Supp. 1465, 1499 (S.D. Fla. 1991) (quoting *Stallworth v. Monsanto Co*., 558 F.2d 257, 265 (5th Cir. 1977)). Because proposed Intervenors have interests that are completely indistinguishable from tens of thousands of other New Hampshire citizens of voting age, the court should deny intervention as of right. *See League of Women Voters v. Va. State Bd. Of Elections* 458 F. Supp. 3d 460, 465 (W.D. Va. 2020) (collecting cases) (finding that "[C]ourts that have addressed intervention motions from similarly situated prospective intervenors… have regularly denied intervention as of right under Rule 24(a).")*.* Here, "[t]here is nothing that distinguishes Prospective Intervenors' interest in this case from that of any other eligible voter" in New Hampshire. *Id*.

The First Circuit has held that "[t]o demonstrate inadequate representation, a putative intervenor must show that no existing party fairly represents her interests. Although this requirement typically demands only a showing that an existing party's representation may prove inadequate, such a showing necessitates more than empty conjecture, a party pursuing intervention as of right must produce some tangible basis to support a claim of purported

inadequacy of representation." *T-Mobile,* 969 F.3d at 36.

Proposed Intervenors cite to a Stateline article quoting Secretary Scanlon saying he really doesn't have strong feelings about where the litigation goes as evidence that "Defendants will not litigate the case as vigorously as Proposed Intervenors." Doc. 6 at 4. The standard is inadequate representation, and Secretary Scanlon's off-hand comments do not show that Defendants will fail to provide adequate representation. Further, unlike cases directly implicating the right to vote, Proposed Intervenors have no interest in this case, which involves regulation of the administration of Federal elections in New Hampshire and the associated records that must be produced under Federal law.

**B.    Proposed Intervenors Cannot Show an Interest That May Be Impaired by the Disposition of this Action.**

The First Circuit has held that "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc*., 440 F.3d 541, 544 (1st Cir. 2006). While the court in *Hnos* held that the intervenors did have an interest that may be impaired due to the contractual rights of the proposed intervenors, it also held that "…in cases where the intervenor's ultimate objective matches that of the named party, a rebuttable presumption of adequate representation applies." *Id.* at 546.

For the reasons explained in the previous section, Proposed Intervenors have no interest because neither the CRA nor HAVA allows private individuals the right to be a party in this action. This is a dispute between the Attorney General of the United States who requested voter registration records, and the State of New Hampshire that maintains those records. The United States is not seeking, and will not be seeking, any information from a single member of the groups represented by the Proposed Intervenors, nor will it be seeking more information than those members have already voluntarily submitted to the State of New Hampshire in order to

participate in Federal elections. Consequently, none of the Proposed Intervenors or their members can be harmed by the outcome of this litigation. Thus, there is no interest that Proposed Intervenors can protect in this litigation other than the generalized interest of all New Hampshire voters, and indeed of all Americans, in the fair and equitable administration of elections. Without an interest, Proposed Intervenors' claims of impairment of that interest must fail.

### C.    Proposed Intervenors Cannot Show Inadequate Representation by the State Government Defendants.

Defendants adequately represent the interests of Proposed Intervenors. The First Circuit starts with the "presumption that the government will adequately defend its action." *Victim Rts. L. Ctr.*, 988 F.3d at 561; see also *Patch*, 136 F.3d at 207 ("the government in defending the validity of the statute is presumed to be representing adequately the interests of all citizens who support the statute.").  "To overcome that presumption, petitioner ordinarily must demonstrate adversity of interest, collusion, or nonfeasance." *Moosehead Sanitary Dist. v. S. G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979).

Here, the record demonstrates that the Proposed Intervenors share the same interests in this litigation – to reject efforts by the United States to obtain the SVRL pursuant to its Federal claims because they allege concerns about voter privacy and how the requested data will be used. The Proposed Intervenors have wholly failed to establish the lack of adequate representation of their position by an existing party. While the Proposed Intervenors claim that Secretary Scanlan may not litigate this case as vigorously as Proposed Intervenors, such a difference does not demonstrate "adversity of interest, collusion or nonfeasance" to warrant intervention when a government entity is the representative party. *Moosehead Sanitary Dist.*, 610 F.2d at 54.  And even if Proposed Intervenors might suggest a different argument—although none has been suggested in their papers—courts have held that different tactical approaches does not demonstrate inadequate representation to justify intervention. See *Maine v. Norton*, 203 F.R.D. 22, 29 (D. Me. 2001). For these reasons, Proposed Intervenors have failed to demonstrate a right

18

to intervention under Rule 24(a)(2) and their Motion must be denied.

## II.  PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR PERMISSIVE INTERVENTION.

Rule 24(b)(2) intervention should be denied for the same reasons. As explained above, Proposed Intervenors' interests and objectives align with those of the State Defendants and Proposed Intervenors have failed to rebut the presumption of adequate representation by Secretary Scanlan as a government representative. Permissive intervention requires more than just a timely motion and raising a "defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2)(1)(B).  As the First Circuit has reminded courts, a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *T-Mobile,* 969 F.3d at 41 (quoting Fed. R. Civ. P. 24(b)(3)). "Multiplying the number of parties in a case will often lead to delay." *Id.*

Denying permissive intervention will not leave the Proposed Intervenors without recourse. Nothing would impede their ability to consult with their duly elected State officials, particularly Secretary Scanlan, about how to proceed. They also "could be adequately satisfied by permitting them to participate as amicus curiae." *Daggett* 172 F.3d at 108. That is an especially appropriate means for Proposed Intervenors to weigh in, given the statements in their briefs showing little more than a speculative, generalized interest in this case.

Accordingly, the Court should deny permissive intervention to Proposed Intervenors.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny the

Motions to Intervene filed by Proposed Intervenors (Doc. 6).


DATED: December 5, 2025                              Respectfully submitted,

                                                     HARMEET K. DHILLON
                                                     Assistant Attorney General
                                                     Civil Rights Division

                                                     */s/ Brittany E. Bennett*
                                                     MAUREEN RIORDAN
                                                     Acting Chief, Voting Section
                                                     Civil Rights Division
                                                     TIMOTHY F. MELLETT
                                                     JAMES THOMAS TUCKER
                                                     BRITTANY E. BENNETT
                                                     Attorneys, Voting Section
                                                     Civil Rights Division
                                                     4 Constitution Square
                                                     150 M Street NE, Room 8.141
                                                     Washington, D.C. 20002
                                                     Maureen.Riordan2@usdoj.gov
                                                     Timothy.F.Mellett@usdoj.gov
                                                     James.T.Tucker@usdoj.gov
                                                     Brittany.Bennett@usdoj.gov
                                                     Tel. (202) 307-2767
                                                     Attorneys for the United States

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ *Brittany E. Bennett*
Brittany E. Bennett
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: brittany.bennett@usdoj.gov