UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO: 1:25-cv-00371-AJ |
| Plaintiff, | |
| v. | MEMORANDUM IN SUPPORT OF THE REQUEST FOR ORDER TO COMPEL PRODUCTION OF RECORDS PURSUANT TO 52 U.S.C. § 20701, *et seq*. |
| DAVID M. SCANLAN in his official capacity as Secretary of State for the State of New Hampshire, and the STATE OF NEW HAMPSHIRE, | |
| Defendants. | |

**<u>MEMORANDUM OF LAW</u>**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................. 4

II.     BACKGROUND .................................................................................. 6

        A.      Title III of the Civil Rights Act of 1960 .................................... 6

        B.      The Attorney General is demanding Federal election records under the

        CRA to assess New Hampshire's HAVA compliance ……………………….7

III.    ARGUMENT………….……………………………………………………...8

        A.  The United States is entitled to an Order to Compel Production under the

            CRA …………………………………………………………………..8

        B.  The CRA does not permit Defendant to withhold federal elections because of

            privacy concerns …………..……………………………………………10

        C.  The Attorney General is entitled to relief under the CRA's summary

            proceeding for obtaining federal election records …..……………………..12

IV.     CONCLUSION………………………………………………………………...14

## TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960)………..……………..6, 12

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)……………………………14

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963)……………………………………..5, 8, 14

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025) ………………………………………………………………….……………14

*Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961)…………………………………..6

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012)…………………………….……………14, 15

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963)…………………………………………...7, 17

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962)…………………………………………….…7

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)…………………………………………passim

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 52 (1st Cir. 2024)…………………..…11

*Smith v. City of Jackson*, 544 U.S. 228 (2005)……………………………………………16

**Statutes**

52 U.S.C. § 20701……………………………………………………………………….passim

52 U.S.C. § 20703……………………………………………………………………….passim

52 U.S.C. § 20704…………………………………………………………………….....10

52 U.S.C. § 20501……………………………………………………………………….....8

52 U.S.C. § 20507………………………………………………………………………...8, 13, 15

52 U.S.C. § 21083………………………………………………………………….…passim

5 U.S.C. § 522a…………………………………………………………………….…10

# I.    INTRODUCTION

Section 301 of Title III of the Civil Rights Act of 1960 ("CRA") imposes a "sweeping" obligation on election officials. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962).[1] It provides, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (transferred from 42 U.S.C. § 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. § 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying … by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand need only "contain a statement of the basis and the purpose therefor." *Id.*; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

On June 25, 2025, the Attorney General, through her representatives, made a written request to Secretary Scanlan, as the chief election official for the State of New Hampshire, seeking information regarding New Hampshire's compliance with Section 303 of HAVA, 52 U.S.C § 21083. (Ex. 1, Dep't Ltr. To Scanlan dated June 25, 2025 ("June 25 Letter")). The June 25 Letter

---

[1] Caselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue. The United States is unaware of any courts disagreeing with the Fifth Circuit's approach to the CRA.

made 15 requests targeted at ensuring New Hampshire's compliance with HAVA and requested New Hampshire's current SVRL, including both active and inactive voters, to evaluate HAVA compliance. *Id*.

On July 25, 2025, Secretary Scanlan responded to the United States' June 25 Letter. Ex. 2, Scan Ltr. To Dep't, dated July 25, 2025 ("July 25 Letter"). Secretary Scanlan's July 25 Letter failed to provide sufficient information to evaluate New Hampshire's compliance with its list maintenance obligations under HAVA Section 303.

On August 18, 2025, the Attorney General sent a written demand to Secretary Scanlan. The CRA provided the basis for making the request, and the letter explained that the purpose of the request "is to ascertain New Hampshire's compliance with the list maintenance requirements of HAVA." Ex. 3, Dep't Ltr. to Scanlan dated August 18, 2025 ("August 18 Letter").  On August 28, 2025, Secretary Scanlan refused to comply with the CRA demand. Ex. 4, Scanlan Ltr. To Dep't dated August 28, 2025 ("August 28 Letter").

Pursuant to Section 305 of the CRA, the United States moves for an order to compel production that requires Secretary Scanlan to produce the federal election records identified in the written demand. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855-56 (M.D. Ala. 1960), *aff'd and adopted in full sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) (per curiam). The CRA displaces the Federal Rules of Civil Procedure by creating a "special statutory proceeding." *Lynd*, 306 F.2d at 225. "All that is required is a simple statement by the Attorney General" after making a written demand for Federal election records and papers covered by the statute, explaining that the person against whom an order is sought has failed or refused to make the requested records "'available for inspection, reproduction, and copying…'" *Id.* at 226 (quoting

52 U.S.C. § 20703). The United States has satisfied those requirements. Accordingly, the United States respectfully requests that the Court issue an order to compel Defendant to produce the federal election records described in its written demand.

## II.    BACKGROUND

### A.    Title III of the Civil Rights Act of 1960.

Under Section 301 of the CRA, every "officer of election" must "retain and preserve … all records and papers which come into his possession relating to any … act requisite to voting in [a federal] election" for a period of twenty-two months from that election. 52 U.S.C. § 20701. Section 303 of the CRA provides, "Any record or paper required by section 301 to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand "shall contain a statement of the basis and the purpose therefor." *Id.*

If an officer of election refuses to comply with the CRA's command, the Act requires "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's investigative powers. *Lynd*, 306 F.2d at 225. The Attorney General or her representative may request a Federal court to issue an order directing the officer of election to produce the demanded records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.*

The special proceeding is "summary" in "nature" and neither "plenary [n]or adversary." *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963); *see Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not amount to the filing of a suit of any kind"). "All that is required is a simple statement by the Attorney General that after a … written demand" for Federal election records covered by Section 301 of the CRA (52 U.S.C. § 20701), "the person against whom an order for production is sought … has failed or refused to make such papers

6

'available for inspection, reproduction, and copying ….'" *Lynd*, 306 F.2d at 226 (quoting 52 U.S.C. § 20703)[2]. The court does not entertain "any other procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* (quoting 52 U.S.C. § 20703). Rather, "[t]he Court, with expedition, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.*

Those matters, though, are "severely limited." *Id.* The court may adjudicate only: (1) "whether the written demand has been made"; and (2) "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Id.* Neither "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand" nor "the scope of the order to produce" is open for review. *Id.*; *see Coleman*, 313 F.2d at 868. As the Fifth Circuit has explained, "No showing even of a prima facie case of a violation of Federal law need be made." *Id.* (citation omitted). Instead, "[i]f, after issuance of an order to produce, a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within [52 U.S.C. § 20701's] broad statutory classification," that issue may be decided by the court. *Lynd*, 306 F.2d at 226.

**B.    The Attorney General is demanding Federal election records under the CRA to assess New Hampshire's HAVA compliance.**

The Attorney General sent the August 18 Letter demanding New Hampshire's SVRL pursuant to the CRA with the purpose of evaluating HAVA compliance. *See* Ex. 3, August 18 Letter. The  Letter explained that "52 U.S.C. § 20703 provides that *all* records or papers required to be

---

[2] Case law addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment.  Since then, no other appellate courts have revisited the issue. A district court in California has granted an order to dismiss a request for records in California, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. January 15, 2026).  As explained below, the California district court failed to follow the correct summary procedure for an Order to Show Cause under the CRA.

retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative." *Id*. at 1.

The August 18 Letter specifically demanded the electronic copy of New Hampshire's SVRL with *all fields*, which means the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under HAVA to register individuals for federal elections. See 52 U.S.C. § 21083(a)(5)(A)(i). Ex. 3 at 1.

The August 18 Letter explained to Secretary Scanlan that "HAVA specifies that the 'last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974.' *See* 5 U.S.C. § 552a note; 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's Privacy Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Department is now doing." Ex. 3 at 2. Secretary Scanlan's July 25 Response and Secretary Scanlan's August 28 Response refusing to provide the SVRL hinder the United States from fully evaluating New Hampshire's compliance with HAVA Section 303, 52 U.S.C. § 21083.

On August 28, 2025, Secretary Scanlan sent a letter rejecting the Attorney General's demand in the August 18 Letter. He stated that New Hampshire law prohibits the disclosure of the SVRL and that, in his view, no provision of federal law compels the production of the SVRL. Secretary Scanlan directed the United States to each municipality's most recent public data. (Ex. 4, "August 28 Letter").

### III.    ARGUMENT

**A.    The United States is entitled to an Order to Compel Production under the CRA.**

An order to compel production of documents under the CRA is appropriate when the United States files a "simple statement" describing its written demand for inspection, reproduction, and copying, and explaining that the officer of election to whom it was directed has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Lynd*, 306 F.2d at 226 (citation omitted). The written demand must include "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The United States' August 18 Letter satisfies these requirements by: (1) making a written demand for inspection, reproduction, and copying of federal election records, including the SVRL and records of voter registration application within twenty-two months of a federal election; (2) directing that demand to Secretary Scanlan, an officer of election as defined by Section 306 of the CRA;[3] and (3) stating that the purpose of the demand is to "ascertain New Hampshire's compliance with the list maintenance requirements of HAVA under 52 U.S.C. § 21083(b)(4)(A) and (B)." Ex. 3, August 18 Letter.

---

[3] Section 306 provides:

> As used in this chapter, the term ''officer of election'' means any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

52 U.S.C. § 20706.

Defendant relies on New Hampshire law claiming that it does not allow him to provide the SVRL to the United States. Defendant claims the United States could seek public data from each municipality directly. (*See* July 25 Letter quoting RSA 654:31, IV). Secretary Scanlan's reliance on State laws to deny the Attorney General's demand for a copy of New Hampshire's SVRL is without merit and insufficient. Officers of election have no discretion to refuse or otherwise limit the federal election records or papers or the content of those records made available to the Attorney General. *See* 52 U.S.C. § 20703; *see also* 52 U.S.C. § 20701 (referring to "all records and papers").

The Attorney General cannot assess compliance with HAVA without the full, unredacted SVRL and other requested federal election records pertaining to New Hampshire's list maintenance efforts. HAVA prohibits a state from processing a voter registration application without the applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's social security number; for those lacking both identification numbers, the state must assign a unique HAVA identifier. *See* 52 U.S.C. § 21083(a)(5)(A)(i)-(ii).

Similarly, HAVA requires list maintenance to "be conducted in a manner that ensures" the elimination of duplicate names from the statewide list. 52 U.S.C. § 21083(a)(2)(B)(iii). Unredacted voter files, including the three identification numbers described above, are needed to determine if the state has a reasonable program of identifying and removing duplicate voter registrations. That is why twenty-five states (not including New Hampshire) share the identical information sought by the Attorney General here with a private organization known as the Electronic Registration Information Center ("ERIC").

The same unredacted federal election records, including the SVRL, are needed to assess New Hampshire's compliance with HAVA. The use of unredacted voter data ensures that matches to identify deceased and duplicate voters are more accurate and complete.

Secretary Scanlan has rejected the United States's written demand pursuant to the CRA to produce New Hampshire's statewide VRL a federal election record. Consequently, the United States respectfully requests that this Court issue an Order compelling Secretary Scanlan to immediately produce those records through a secure method. *See Lynd*, 306 F.2d at 226; *Coleman*, 313 F.2d at 868.

    **B.**    **The CRA does not permit Defendant to withhold federal elections because of privacy concerns.**

Defendant has refused to produce the federal election records demanded by the Attorney General under the CRA because he contends that New Hampshire law prohibits the disclosure of the SVRL and that, in his view, no provision of federal law compels the production of the SVRL. Ex. 4. First, the August 18 letter provided Secretary Scanlan with the Attorney General's purpose for the demand. Second, the Supremacy Clause of the Constitution says otherwise. It is a basic tenet of our federal system that when Federal and State law conflict, the federal law governs. *See* U.S. Const. art. VI. As this Circuit has explained, "[i]n general, a court must presume that Congress did not intend to preempt state law without expressly stating its intent. But that assumption 'does not hold' when Congress acts pursuant to its authority under the Elections Clause, which specifically 'empowers Congress to "make or alter" state election regulations.'" *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 52 (1st Cir. 2024); *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).

A South Carolina court recently confronted the same argument from an individual voter

seeking to enjoin state officials from cooperating with the Department. Addressing federal preemption over state statutes governing privacy, the court explained, "Federal law likely requires the Election Commission to provide the requested information to DOJ, and while DOJ has also pointed to the National Voter Registration Act and the Help America Vote Act, Title III [of the Civil Rights Act] alone is sufficient to reach that conclusion." *Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025), attached to the Declaration of Eric Neff as Ex. 5, at 10. The court noted, "Title III requires that, for 22 months after a federal election, a state election official 'retain and preserve' 'all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.' 52 U.S.C. § 20701." *Id.* at 10-11. The court reasoned:

> Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id.* § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id.*

*Id.* at 11. As a result, the court found, "DOJ's request for South Carolina's voter registration list fits comfortably within this legal framework" and denied the voter's request to enjoin the state's production of its list to the Department. *Id.* at 11-12. For those reasons, *id.*, any state-law privacy right to the contrary is preempted by the CRA's broad grant of access to the Attorney General.[4] *See*

---

[4] The District Court for the Eastern District of North Carolina recently addressed privacy concerns asserted by Proposed Intervenors in *United States v. North Carolina State Board of Election*, et. al., Case No. 5:25-cv-00283-M-RJ. The North Carolina Court held that privacy assertions, including the assertion that the Department of Justice is developing a national voter file, were

52 U.S.C. § 20703; *Bellows*, 92 F.4th 36 at 52. Consequently, the Attorney General is entitled to the federal election records she has demanded from Secretary Scanlan under the CRA, notwithstanding any conflicting state privacy laws.

### C.    The Attorney General is entitled to relief under the CRA's summary proceeding for obtaining federal election records.

The CRA displaces the Federal Rules of Civil Procedure and creates a "special statutory proceeding" under which Secretary Scanlan, as an officer of election for New Hampshire, must produce the voter-registration lists and other federal election records demanded by the Attorney General.[5] *Lynd*, 306 F.2d at 225. The court in *Lynd* reasoned that a special proceeding was necessary to obtain federal election records because no other procedural device or maneuver was available:

> There is no place for a motion for a bill of particulars or for a more definite statement under F.R.Civ.P. 12(e), 28 U.S.C.A. There is no place for any other procedural device or maneuver— either before or during any hearing of the application— to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand. [52 U.S.C. § 20703]. Thus with respect to the reasons why the Attorney General considers the records essential, there is no place, either as a part of pleadings, discovery, or trial, for interrogatories under F.R.Civ.P. 33, oral depositions of a party under F.R.Civ.P. 26(a), 30, production of documents under F.R.Civ.P. 34, or request for admissions as to facts or genuineness of documents or other things under F.R.Civ.P. 36, 37.

---

"speculative and premature" and entered an order *denying* the Proposed Intervenors' Renewed Motion to Intervene. A copy of this order is attached to the Declaration of Eric Neff as "Exhibit 6."

[5] Although this Motion for an Order to Compel Production is made under the CRA, the United States notes that the NVRA includes a similar requirement for production of Federal election records. *See* 52 U.S.C. § 20507, 20510(a). "[W]hen Congress uses the same language in two statutes having similar purposes … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion).

*Id.* at 226.

The "special statutory proceeding" of these statutes is "a summary proceeding." *Id.* at 225-26. To institute this proceeding, the United States need only file a "simple statement" describing its written demand for the federal election records and explaining that Secretary Scanlan, acting as an officer of election for New Hampshire, "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (citation omitted).

Accordingly, the Court "should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.* The Attorney General's right to reproduction and copying of federal election records is not dependent upon any other showing. *Id.* Therefore, the United States respectfully requests that this Court issue an Order directing Secretary Scanlan to produce the federal election records described in the Attorney General's written demand.

## IV.    CONCLUSION

For the foregoing reasons, the United States requests that this Court enter an Order directing Defendant to comply with the Attorney General's demand pursuant to the CRA an electronic copy of New Hampshire's SVRL with *all fields* including the name, date of birth, driver's license number, last four digits of the social security number or the HAVA unique identifier.  Those records should be provided electronically to the United States within five days.

14

DATED: January 29, 2026          Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ERIC V. NEFF
Acting Chief, Voting Section
Civil Rights Division


*/s/ Brittany E. Bennett*
BRITTANY E. BENNETT
JAMES THOMAS TUCKER
Attorneys, Voting Section
Civil Rights Division
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Brittany.Bennett@usdoj.gov
James.T.Tucker@usdoj.gov
Tel. (202) 307-2767
Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ *Brittany E. Bennett*
Brittany E. Bennett
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: brittany.bennett@usdoj.gov

16