# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| | Case No. 1:25-cv-00371-JL |
| v. | |
| | **INTERVENOR DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |
| DAVID M. SCANLAN in his official capacity as Secretary of State for the State of New Hampshire, and the STATE OF NEW HAMPSHIRE, | |
| *Defendants*. | |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 2

I.    The motion to dismiss is appropriate under the Federal Rules of Civil Procedure. ........... 2

II.   The Court must review the lawfulness of DOJ's demand. ................................................. 3

III.  DOJ is not entitled to the voter list because it failed to provide an adequate basis
      and purpose under the CRA. ....................................................................................... 4

      A.    The demand cannot be reconciled with New Hampshire's limited federal
            obligations under HAVA. ...................................................................................... 4

      B.    DOJ did not provide any statement of the basis for its demand. ........................... 5

      C.    DOJ did not provide a legally sufficient purpose for its demand. ......................... 6

IV.   Title III does not prohibit redaction of sensitive voter information.................................... 8

V.    DOJ's failure to comply with the Privacy Act is further grounds for dismissal............... 10

CONCLUSION.............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama ex rel. Gallion v. Rogers*,
  187 F. Supp. 848, 853 (M.D. Ala. 1960) .................................................................. 6

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1, 9 (2013) ............................................................................................... 9

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
  854 F.3d 683, 690 (D.C. Cir. 2017) ..................................................................... 3, 4

*CFPB v. Source for Pub. Data, L.P.*,
  903 F.3d 456, 458–60 (5th Cir. 2018).................................................................... 3

*Colon-Marrero v. Velez*,
  813 F.3d 1 (1st Cir. 2016) .................................................................................... 4, 5

*Dep't of Com. v. New York*,
  588 U.S. 752, 756 (2019) ........................................................................................ 8

*In re Coleman*,
  208 F. Supp. 199, 199–200 (S.D. Miss. 1962)........................................................ 6

*Jones v. Bock*,
  549 U.S. 199, 215 (2007) ...................................................................................... 10

*Kennedy v. Lynd*,
  306 F.2d 222 (5th Cir. 1962).................................................................................. 2, 4

*Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co.*,
  215 F.3d 195 (1st Cir. 2000) ................................................................................... 5

Pub. Int. Legal Found., Inc. v. Bellows,
  92 F.4th 36, 56 (1st Cir. 2024) ............................................................................... 9

*Torres-Rosado v. Rotger-Sabat*,
  335 F.3d 1 (1st Cir. 2003) ....................................................................................... 4

*United States v. Benson*,
  --- F. Supp. 3d ----, No. 1:25-CV-01148,
  2026 WL 362789 (W.D. Mich. Feb. 10, 2026)................................................ 1, 2, 4

*United States v. Bisceglia*,
  420 U.S. 141 (1975)................................................................................................ 1

United States v. Mo. Pac. R.R. Co.,
  278 U.S. 269, 278 (1929) ........................................................................ 7

*United States v. Oregon*,
  No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ........................................... 1, 2, 4

*United States v. Powell*,
  379 U.S. 48 (1964) ........................................................................ 1, 2, 3

United States v. Sepulveda-Hernandez,
  752 F.3d 22, 27 (1st Cir. 2014) ........................................................................ 7

*United States v. Weber*,
  --- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ....... 1, 2, 4

*Util. Air Regul. Grp. v. EPA*,
  573 U.S. 302, 321 (2014) ........................................................................ 7

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457, 468 (2001) ........................................................................

**Constitution**

N.H. Const. pt. 1, art. 2-b ........................................................................ 8

**Statutes**

5 U.S.C. § 552a ........................................................................ 10

26 U.S.C. § 7604 ........................................................................ 3

52 U.S.C § 20703 ........................................................................ 1, 3

52 U.S.C. § 20705 ........................................................................ 3

52 U.S.C. § 21083 ........................................................................ 4, 5

RSA § 654:45(VI) ........................................................................ 8

**Regulations**

Privacy Act of 1974; System of Records, 82 Fed. Reg. 24147 (May 25, 2017) ........................ 10

**Other Authorities**

Antonin Scalia & Brian A. Garner, *Reading Law* (2012) ........................................ 7

*Black's Law Dictionary* (4th ed. 1968) ........................................................................ 5

H.R. Rep. No. 86-956, at 7 (1959)......................................................................................... 6

## INTRODUCTION

The Department of Justice ("DOJ") has filed dozens of lawsuits nearly identical to this one seeking to compel the production of voter lists. Every federal court to reach a decision in these cases has dismissed DOJ's complaint. *See United States v. Weber*, --- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, --- F. Supp. 3d ----, No. 1:25-CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026). This Court should do the same.

DOJ's threshold argument that the motions to dismiss are procedurally improper is irreconcilable with Supreme Court precedent construing a statute with identical operative text. *See United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). Nor is DOJ's merits argument well founded. To start, DOJ largely ignores the Voter Intervenors' explanation that New Hampshire's exemption from the NVRA—and correspondingly limited responsibilities under HAVA—undercuts the entire rationale for DOJ's investigation. *See* ECF No. 37-1 ("MTD") at 10–12. DOJ fails to explain how the various HAVA provisions it points can justify federal intrusion into activities that are—in this State—domains of state law. But, even setting aside this fundamental problem, DOJ failed to satisfy the core statutory requirement that it provide both "the basis and the purpose" for its demand under Title III of the Civil Rights Act of 1960 ("CRA"). 52 U.S.C § 20703. In its opposition, DOJ does not identify *any* "basis" for the demand aside from the CRA itself, arguing that it may demand records "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." ECF No. 51 ("Opp.") at 10 n.4 (quoting *United States v. Bisceglia*, 420 U.S. 141, 148 (1975)). But by expressly requiring that "the basis and the purpose" be provided in any request for production of voter information, the CRA demands more. And DOJ's stated purpose—to investigate New Hampshire's compliance with HAVA—is not a valid purpose under the CRA, which is concerned with protecting the constitutional right to vote rather than with

enforcing election administration rules. Finally, DOJ's response also effectively jettisons its distinct claim under HAVA itself, which DOJ concedes does not contain any disclosure provision. *See* Opp. at 31 n.14; *see also* MTD at 19–20.

Two other independent grounds warrant dismissal here: (1) New Hampshire law prohibits the disclosure of the sensitive information DOJ seeks, and the CRA does not preempt these privacy laws; and (2) DOJ failed to comply with prerequisites imposed by the federal Privacy Act before it can collect the data it seeks. In response to both issues, DOJ simply reasserts its position without grappling with the opposing arguments. It suggests that the CRA preempts state privacy law—but offers no preemption analysis to that effect. And while DOJ claims that it complied with the Privacy Act, it never explains how any SORN it relies on encompasses New Hampshire's entire statewide voter list. For all of these reasons, this suit should be dismissed.

## ARGUMENT

### I.    The motion to dismiss is appropriate under the Federal Rules of Civil Procedure.

DOJ's lead argument—that the Federal Rules of Civil Procedure, and thus Rule 12(b)(6), do not apply here—is squarely foreclosed by Supreme Court precedent. *See Weber*, 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402, at *8. DOJ relies on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), but as both *Weber* and *Oregon* recently held, that case—which is non-binding in this Circuit in any event—is wholly irreconcilable with the Supreme Court's subsequent decision in *Powell*. *See Weber*, 2026 WL 118807, at *8 n.15; *Oregon*, 2026 WL 318402, at *8. DOJ responds by pointing to *Benson*. Opp. at 12. But *Benson*, too, granted Rule 12(b)(6) motions—so it cannot have held that such motions are improper in cases like these. *See Benson*, 2026 WL 362789, at *2, *7 ("[T]he Court will apply the Rule 12(b)(6) standard to evaluate the United States' CRA claim."). DOJ also protests that *Powell* involved a different statute and that "Congress has indicated that the Federal Rules of Civil Procedure are inapplicable" to the CRA. Opp. at 11. But

in fact what *Powell* confirms is that when a statue simply says that it should be enforced through "appropriate process," and "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." 379 U.S. at 58 n.18. That *Powell* specifically concerned 26 U.S.C. § 7604(a) is of no moment. The relevant language in that statute is *identical* to the relevant part of the CRA—both provide that district courts "shall have jurisdiction by appropriate process to compel" the production of the records the government seeks. 52 U.S.C. § 20705; 26 U.S.C. § 7604(a). The same conclusion that the Federal Rules apply must be true for the CRA's identical text. To the extent *Lynd* suggests courts do not apply the Federal Rules to a government document demand, that is simply not the law. Voter Intervenors' motion to dismiss is procedurally proper.

## II.    The Court must review the lawfulness of DOJ's demand.

DOJ is also wrong to claim this Court cannot conduct meaningful judicial review of its demand. Courts routinely review whether government demands comply with their authorizing statutes. *E.g.*, *Powell*, 379 U.S. at 57 (holding that the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose"); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (similar). As *Powell* explains, judicial review flows from the fact that "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." 379 U.S. at 58. And contrary to DOJ's argument, such review is not limited to IRS records requests. *E.g.*, *Source for Pub. Data*, 903 F.3d at 458–60; *CFPB v. Accrediting Council for Indep. Colls. & Schs.* ("*ACICS*"), 854 F.3d 683, 690 (D.C. Cir. 2017).

Here, the CRA includes the express requirement that any demand state "the basis and the purpose" for the government's request. 52 U.S.C. § 20703. Even under the *Lynd* court's understanding of the CRA, a court must decide "whether the written demand has been made"

according to "§ [20703]." 306 F.2d at 226. The Court is therefore obliged to review DOJ's demand

for New Hampshire's voter list to determine whether it complies with the CRA. *See, e.g.*, *ACICS*,

854 F.3d at 690 (declining to enforce civil investigative demand where agency failed to comply

with statutory requirements). Courts have done so in all recent challenges to DOJ's parallel

demands of other states. *See Weber*, 2026 WL 118807, at *8–10 (holding that "DOJ has not

complied with Title III of the CRA and has provided an inadequate statement of basis and purpose"

and dismissing claim as a result); *Oregon*, 2026 WL 318402, at *7–10 (similar).[1]

## III.    DOJ is not entitled to the voter list because it failed to provide an adequate basis and purpose under the CRA.

### A.    The demand cannot be reconciled with New Hampshire's limited federal obligations under HAVA.

DOJ has chiefly premised its battery of lawsuits against the States on the notion that it

needs to assess their compliance with the NVRA's and HAVA's list maintenance obligations. But

the NVRA does not apply to New Hampshire. *See* Compl. ¶ 25. And as Voter Intervenors have

explained, New Hampshire's NVRA exemption means that the State is also exempt from many of

the parts of HAVA on which DOJ relies, leaving New Hampshire's list maintenance obligations

almost entirely to state law. *See* 52 U.S.C. § 21083(a)(2)(A), (a)(4), (a)(5), (b)

Voter Intervenors pointed all this out in their motion, *see* MTD at 10–12, but DOJ largely

ignores the argument, forfeiting any response. *See Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1, 5

(1st Cir. 2003). In a footnote, DOJ quotes, without explanation, from the First Circuit's decision

in *Colon-Marrero v. Velez*, 813 F.3d 1, 13–14 (1st Cir. 2016). Opp. at 8 n.3. That decision

concerned solely HAVA's restriction on removals for failure to vote in 52 U.S.C. § 21083(a)(4)(A)

---

[1] The fact that the *Benson* court passingly referred to its own review as "limited" is of no moment; even that court still ultimately dismissed DOJ's claim based on its review of whether DOJ's demand complied with the CRA. *Benson*, 2026 WL 362789, at *9–11 (dismissing DOJ's suit on alternative ground under the text of the CRA).

and turned on the specific text of that portion of that subsection. *Colon-Marrero*, 813 F.3d at 11 (relying on the provision's "clear, affirmative language"). DOJ has never asserted that it is seeking to investigate compliance with that narrow portion of HAVA, and Voter Intervenors did not argue that New Hampshire is exempt from that narrow restriction on failure-to-vote removals. But as Voter Intervenors explained, the provisions actually at issue here are different: they either expressly exempt NVRA-exempt states like New Hampshire, *see* 52 U.S.C. § 21083(a)(2)(A)(iii), require only that New Hampshire law "include [particular] provisions," *id.* § 21083(a)(4), or expressly leave the relevant determination to the State and State law, *id.* § 21083(a)(5)(a)(iii). DOJ has no response and therefore fails to identify any *federal law* duty applicable to New Hampshire that could conceivably justify the document demand DOJ makes here.

### B.    DOJ did not provide any statement of the basis for its demand.

DOJ also failed to include *any* statement of the "basis" for its demand in its August 18, 2025 letter to Secretary Scanlan. *See* MTD. at 17–21. DOJ puzzlingly responds that "the basis for the demand was Title III of the Civil Rights Act of 1960 (CRA)." Opp. at 8; *see also id.* at 20 ("The CRA provided the basis for making the request"). But that is the *authority* under which the request was purportedly made, not the factual *basis* for the request. *E.g.*, *Basis*, *Black's Law Dictionary* (4th ed. 1968) (including definitions for "basis" such as the "groundwork," "support," or "foundation" of something). DOJ's contrary argument is circular—the CRA cannot be the "basis" for a CRA demand under the statute; if it could, the statutory requirement to provide the "basis" would be superfluous. *See Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co.*, 215 F.3d 195, 202 (1st Cir. 2000) ("A reading that renders a statutory provision surplusage is disfavored.").

Even the Civil Rights era cases that DOJ relies on show that DOJ has historically understood this requirement to call for an accounting of the factual basis for its investigation. *See, e.g.*, *Lynd*, 306 F.2d at 229 n.6 ("This demand is *based upon* information in the possession of the

Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." (emphasis added)); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (similar); *see also Oregon*, 2026 WL 318402, at *9 ("The Court understands 'basis' to mean a factual basis for investigating a violation of a federal statute."). In contrast, DOJ's demand here offers no hint or suggestion of a "possible" violation of any law by New Hampshire. Mot. to Compel Produc., ECF No. 31-1 at 9; *see also* MTD at 20.

DOJ also asserts that the factual basis for its demand cannot be challenged, *see* Opp. at 21, but that argument is a red herring because DOJ's demand failed to provide *any basis at all* and therefore undeniably fails to specify "the basis . . . for" the demand, which alone requires dismissal. *E.g.*, *Source for Pub. Data*, 903 F.3d at 460 (declining to enforce civil investigative demand because "[an agency] must comply with statutory requirements, and here it did not"); *Weber*, 2026 WL 118807, at *9 (holding that DOJ failed to "establish[] the basis for its request" because it failed to explain why it believed California violated federal law or why the voter registration list was necessary for its investigation); *Oregon*, 2026 WL 318402, at *9 (similar). Indeed, even DOJ concedes th at the CRA allows the Court to review whether the Attorney General made "a written demand . . . stating the basis and purpose." Opp. at 6. Here, the Attorney General made no such demand, which dooms its suit to enforce the demand.

### C.    DOJ did not provide a legally sufficient purpose for its demand.

DOJ's demand also fails to satisfy Title III's separate "purpose" requirement. Congress enacted Title III "to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also* H.R. Rep. No. 86-956, at 7 (1959) (explaining Congress enacted Title III to aid DOJ "during any investigation it may conduct on complaints of

a denial to vote"). But DOJ is not seeking New Hampshire's voter list because it suspects any specific violations of federal law or infringement of the right to vote. Rather, DOJ admits that it seeks the list to assess New Hampshire's compliance with HAVA. *See* Opp. at 9. As explained, this is not a sufficient purpose under Title III. *See* MTD at 12–15.

DOJ's opposition contends that CRA investigations cannot be limited to those based on racial discrimination or violations of the right to vote. Opp. at 15. But DOJ's argument ignores that, when construing the "purpose" requirement, the "statute ought to be read as a whole." *United States v. Sepulveda-Hernandez*, 752 F.3d 22, 27 (1st Cir. 2014); *see also* Antonin Scalia & Brian A. Garner, *Reading Law* 145 (2012) ("The text must be construed as a whole."). DOJ also ignores the well-established principle that courts must "account for both the specific context in which . . . language is used and the broader context of the statute as a whole." MTD at 13 (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (citation modified)).

Here, the term "purpose" must be read in the context of the CRA—a law designed to enhance DOJ's enforcement powers for the protection of *civil rights* provided by the Civil Rights Act of 1957. *See* MTD at 13–14; *see also United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929) ("[T]he reasons for and the significant circumstances leading up to the enactment may be noticed in confirmation of the meaning conveyed by the words used."). To do otherwise would be to assume Congress intended for DOJ to be able to demand state election records for the purpose of investigating compliance with *any* federal statute, even if those statues dealt with subjects as far afield from the CRA as antitrust, bankruptcy, or admiralty law. Had Congress intended such a sweeping result, it surely would have said so explicitly. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

DOJ does not cite any case in which a court has granted a demand made under the CRA to

assess a State's HAVA compliance. *See* MTD at 15. DOJ now contends that it "has pursued successful matters" to obtain voter lists under the CRA for this purpose. Opp. at 27 & n.10. But, in the first matter it cites, Georgia entered a consent decree with DOJ immediately after DOJ sued to "resolv[e] this matter without the need for litigation," and in the second, Texas chose to enter a Memorandum of Understanding with DOJ without any litigation. *See* Second Decl. of Eric Neff in Supp. of Opp., Exs. 7–9, ECF Nos. 51-2, 51-3, 51-4. In neither instance was the applicability of the CRA contested or resolved by a court.

Finally, whatever the propriety of DOJ's stated purpose, there is ample evidence that it does not reflect DOJ's true purpose. *See* MTD at 16–17. As noted, the 1960s-era cases that DOJ relies on all involved situations where Title III was unquestionably being used for its stated purpose—investigating the potential denial of voting rights—so there was little need for inquiry into the sincerity of DOJ's stated purpose. *See* MTD at 15 n.12. In contrast, DOJ's public statements in the present context have repeatedly made clear that its purposes go "beyond [its] purported compliance check . . . and into the territory of comprehensive data collection." *Weber*, 2026 WL 118807, at *10 (citing *Dep't of Com. v. New York*, 588 U.S. 752, 756 (2019)); *see also Oregon*, 2026 WL 318402, at *11. The Court is not obliged to accept DOJ's "contrived" purpose. *Weber*, 2026 WL 118807, at *10.

## IV.    Title III does not prohibit redaction of sensitive voter information.

DOJ's complaint must also be dismissed because New Hampshire is entitled to redact sensitive personal information from any production of the statewide voter list, including if produced in response to a demand under the CRA. *See* MTD at 21–23. DOJ does not contest that New Hampshire law protects such information, *see* N.H. Const. pt. 1, art. 2-b; RSA § 654:45(VI), yet fails to explain how the CRA preempts such state law protections. It does not.

*First*, Title III does not preempt New Hampshire's privacy laws protecting the information

at issue. *See* MTD at 21–23. DOJ suggests in one sentence that the CRA preempts such laws—but it fails to make any argument to this effect or to conduct any preemption analysis. *See* Opp. at 7. Congress may preempt state election law, but that power extends only "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013). Where Congress has not spoken on an issue, state law controls. *See id.* And the federal laws regulating voter registration sit "atop state voter-registration systems"—they do not displace them. *Id.* at 5. Nothing in Title III specifically addresses state-law confidentiality protections for especially sensitive data, and *Lynd* shows that it has long been understood that the CRA reaches only "public records" rather than "confidential, private papers and effects." 306 F.2d at 231. Indeed, the private information sought here was not even required to be provided on registration forms until well after the enactment of Title III, which means Congress could not have intended it to require disclosure of that information. *See* MTD at 22–23. Even the NVRA—which does impose some disclosure obligations, but which DOJ agrees does not apply to New Hampshire—allows states to redact sensitive voter information before permitting the inspection of voter files. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

*Second*, the overwhelming judicial consensus that redaction is permitted under the NVRA reinforces that the same must be true of the CRA. *See* MTD at 21–22. Numerous courts have held that the NVRA does not prohibit States from redacting precisely the information that DOJ demands here. *See, e.g.*, MTD at 21 n.18 (collecting cases); *Weber*, 2026 WL 118807, at *12–13; *Oregon*, 2026 WL 318402, at *12. It would make little sense to conclude that the CRA requires New Hampshire to disclose sensitive information for purposes of allowing DOJ to assess the State's HAVA compliance, when HAVA does not require such disclosure at all *and* the NVRA's explicit disclosure provision likewise does not require production of that information. DOJ, once again,

has no answer to this, and this too is another independent basis for dismissal.[2]

## V.    DOJ's failure to comply with the Privacy Act is further grounds for dismissal.

Finally, DOJ's failure to comply with the Privacy Act also requires dismissal. *See* MTD at 23–25. DOJ contends that the Privacy Act "does not restrict the ability of state actors to share information with federal agencies." Opp. at 34. But this ignores the central point: the Privacy Act imposes restrictions on federal agencies like DOJ and DOJ has not complied with them. *See* 5 U.S.C. § 552a(a)(3); *see also Weber*, 2026 WL 118807, at *17–18.

DOJ next insists that it is not required to plead compliance with the Privacy Act. Opp. at 32. But it is well established that a motion to dismiss may be granted when the "allegations in the complaint suffice to establish" "the basis for dismissal." *Jones v. Bock*, 549 U.S. 199, 215 (2007). As DOJ does not contest, it was required to publish a System of Records Notice ("SORN") that applies to New Hampshire's statewide voter list before collecting and maintain such information. *See* MTD at 24. Rather than point to a specific SORN that actually does this, DOJ cites to a table of every SORN ever issued by DOJ. *See* Opp. at 32–33 (citing Privacy Act of 1974; System of Records, 82 Fed. Reg. 24147 (May 25, 2017)). But DOJ makes no effort to explain how any particular SORN encompasses New Hampshire's statewide voter registration list. No such SORN exists, which means DOJ's CRA demand fails to comply with the Privacy Act as a matter of law. *Weber*, 2026 WL 118807, at *18.

### CONCLUSION

The Court should dismiss the complaint for the reasons above and those previously stated.

---

[2] As previously explained, there is no merit to DOJ's contention that it should be handed the sensitive information it seeks because "private parties have been granted access to even more detailed voter data than what the United States has requested." Opp. at 31. This indisputable fact has been repeatedly pointed out to DOJ, *e.g.*, ECF No. 22 at 4 & n.3; Reply in Supp. of Mot. to Dismiss, *Weber*, No. 2:25-CV-09149 (C.D. Cal. Nov. 3, 2025), ECF No. 31, yet DOJ persists in repeating its false claim here.

Dated: February 27, 2026

Respectfully submitted,

*/s/ Steven J. Dutton*
Steven J. Dutton, NH Bar No. 17101
**McLANE MIDDLETON, P.A.**
900 Elm Street
Manchester, New Hampshire 03101
Telephone: (603) 625-6464
steven.dutton@mclane.com

Paul Twomey, NH Bar No. 2589
**TWOMEY LAW OFFICE**
PO Box 623
Epsom, New Hampshire 03234
Telephone: (603) 568-3254
polotuama7@gmail.com

Elisabeth C. Frost*
David R. Fox*
Christopher D. Dodge*
Marcos Mocine-McQueen*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
efrost@elias.law
dfox@elias.law
cdodge@elias.law
mmcqueen@elias.law

Walker McKusick*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
(206) 656-0177
wmckusick@elias.law

*Counsel for Intervenor-Defendants*

*\* Admitted Pro Hac Vice*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 27, 2026, the foregoing document was served via e-mail on all counsel of record.

*/s/ Steven J. Dutton*