# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. DAVID M. SCANLAN in his official capacity as Secretary of State for the State of New Hampshire, and the STATE OF NEW HAMPSHIRE, *Defendants*. | Case No. 1:25-cv-00371-JL  **MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ......................................................................................................................... 3

I.     The Federal Rules are the appropriate process for DOJ's claims. ..................................... 4

II.    The Court must conduct meaningful review of DOJ's demand. ........................................ 6

III.   The appropriate procedural course is for the Court to resolve the pending motions
to dismiss and then, if needed, to proceed to discovery...................................................... 11

CONCLUSION..................................................................................................................... 13

## TABLE OF AUTHORITIES

**CASES**

*Alabama ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) .................................................................................. 8

*Beddall v. State St. Bank & Tr. Co.*,
    137 F.3d 12 (1st Cir. 1998) ................................................................................................ 11

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
    854 F.3d 683 (D.C. Cir. 2017) ............................................................................................ 7

*CFPB v. Source for Pub. Data, L.P.*,
    903 F.3d 456 (5th Cir. 2018) .............................................................................................. 7

*Correa-Martinez v. Arrillaga-Belendez*,
    903 F.2d 49 (1st Cir. 1990) ................................................................................................ 11

*Gahagan v. USCIS*,
    911 F.3d 298 (5th Cir. 2018) .............................................................................................. 6

*Godin v. Schencks*,
    629 F.3d 79 (1st Cir. 2010) ................................................................................................ 11

*Gonzales v. Thaler*,
    623 F.3d 222 (5th Cir. 2010) .............................................................................................. 6

*In re Admin. Subpoena No. 25-1431-019*,
    800 F. Supp. 3d 229 (D. Mass. 2025) ................................................................................. 7

*In re Sealed Case (Admin. Subpoena)*,
    42 F.3d 1412 (D.C. Cir. 1994) ........................................................................................... 7

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) ....................................................................................... 5, 6, 8, 9, 10

*Rios-Campbell v. U.S. Dep't of Com.*,
    927 F.3d 21 (1st Cir. 2019) ................................................................................................ 11

*Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*,
    584 F.3d 340 (1st Cir. 2009) .............................................................................................. 7

*United States v. Benson*,
    No. 1:25-CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ................................ 4

*United States v. Lynd*,
    301 F.2d 818 (5th Cir. 1962) .................................................................................................. 9

*United States v. Oregon*,
    No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ........................ *passim*

*United States v. Powell*,
    379 U.S. 48 (1964) ............................................................................................... 5, 6, 7, 8

*United States v. Weber*,
    No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ......... *passim*

*Velez v. Awning Windows, Inc.*,
    375 F.3d 35 (1st Cir. 2004) ................................................................................................ 13

**STATE CONSTITUTIONAL PROVISIONS**

N.H. Const. pt. 1, art. 2-b .................................................................................................... 11

**STATUTES**

26 U.S.C. § 7604 .................................................................................................................... 5

29 U.S.C. § 161 ...................................................................................................................... 4

52 U.S.C. § 20705 .............................................................................................................. 1, 5

RSA § 654.45 ....................................................................................................................... 11

S.C. Code Ann. § 7.5.186 .................................................................................................... 10

**FEDERAL RULES**

Fed. R. Civ. P. 1 .................................................................................................................... 4

Fed. R. Civ. P. 6 .................................................................................................................... 5

Fed. R. Civ. P. 81 .................................................................................................................. 4

**OTHER AUTHORITIES**

AAG Harmeet Dhillon, (@AGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET),
    https://x.com/AAGDhillon/status/2001659823335616795 .............................................. 12

Comment, *Judicial Performance in the Fifth Circuit*, 73 Yale L.J. 90 (1963) ............................... 9

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD .................................................................................................................. 12

Mariana Alfaro, *Trump Wants to "Nationalize the Voting," Seeking to Grab States' Power*, Wash. Post (Feb. 3, 2026), https://www.washingtonpost.com/politics/2026/02/02/trump-elections-nationalize-fraud/ ........................................................................................................ 12

*Read Bondi's Letter to Minnesota's Governor*, N.Y. Times (Jan. 24, 2026), https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html ............................................................................................................. 12

**INTRODUCTION**

The Federal Rules of Civil Procedure lay out the appropriate process of a civil action: start with Rule 12(b) motions and then—if a plaintiff states a claim and establishes jurisdiction—proceed to discovery, summary judgment, and trial if necessary. Throughout that process, a defendant has multiple opportunities to test the legal and factual bases of the plaintiff's claims and to build any necessary record. The Federal Rules also provide familiar governing standards for courts to apply at each step, all with an eye toward the ordered and efficient resolution of disputes.

The U.S. Department of Justice ("DOJ") asks this Court to sweep all that aside and to instead put the onus on Defendants to resist a "motion for order to compel records demanded pursuant to the Civil Rights Act of 1960" at the start of the case, ECF No. 31, which would immediately grant DOJ the final relief it seeks in this action. That is not how civil litigation works. Nothing in the Federal Rules or the statutes underlying DOJ's claim authorizes this departure from the regular course of proceeding or permits DOJ to short-circuit the Rules for its own convenience. Contrary to DOJ's suggestion, Title III of the Civil Rights Act of 1960 does not "displace[]" the Federal Rules or create a "special statutory proceeding" when DOJ demands voting records. Mem. Supp. Mot. Compel ("DOJ Mem.") at 5, ECF No. 31-1. The term "special statutory proceeding" appears nowhere in the Civil Rights Act, which merely states that district courts "shall have jurisdiction *by appropriate process*" to grant relief under that law. 52 U.S.C. § 20705 (emphasis added). Finding nothing in the text of Title III to support this theory, DOJ relies instead on a lone, out-of-circuit case from 1962—but that case is distinguishable many times over, is displaced by intervening Supreme Court authority, and, in any event, cannot trump the Federal Rules.

To date, two federal courts have already rejected DOJ's argument that the Federal Rules do not apply to its CRA requests. *See United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807, at *8 (C.D. Cal. Jan. 15, 2026) ("Nothing in the text of Title III requires a special

1

statutory proceeding or any abbreviated procedures."); *United States v. Oregon*, No. 6:25-CV-01666-MTK, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026) (concluding the "the Court applies the Federal Rules of Civil Procedure as in any other case" to CRA requests). This Court should likewise reject DOJ's effort to leapfrog the stages of litigation it apparently finds bothersome and allow the action to unfold as prescribed by the Federal Rules—starting by resolving the pending motions to dismiss. *See* ECF Nos. 32, 37; *see also Weber*, 2026 WL 118807, at *20 (granting motion to dismiss with prejudice); *Oregon*, 2026 WL 318402, at *13 (same).

## BACKGROUND[1]

DOJ filed this suit on September 25, 2025, seeking to compel New Hampshire to turn over its full statewide voter registration list without redacting sensitive information protected from disclosure by state law. *See* Compl. at 15–16, ECF No. 1. DOJ's complaint contains two causes of action: one under Title III of the Civil Rights Act of 1960 and one under the Help America Vote Act ("HAVA"). *See id.* ¶¶ 55–61. Neither permit DOJ's sweeping and novel demand, as Voter Intervenors explain more thoroughly in their motion to dismiss. *See generally* Intervenors' Mot. Dismiss, ECF No. 37-1 ("Ints.' Mot. Dismiss"); *see also* ECF No. 32.

With respect to Title III, the Civil Rights Act of 1960 cannot support the relief DOJ seeks. DOJ states no lawful basis and purpose for its demand. *See* Ints.' Mot. Dismiss, Argument § I. It says it is investigating compliance with HAVA, but it articulated no legal or factual basis in its demand for believing New Hampshire is violating *any* of its list maintenance obligations under federal law—which are significantly narrower than for most States because New Hampshire is exempt from both the NVRA and portions of HAVA. *See id.* §§ I.A, II. Nor can Title III be used

---

[1] Voter Intervenors' Motion to Dismiss further explains the background and procedural posture of this case, as well as DOJ's wide-ranging demands for sensitive voter information in New Hampshire and throughout the country. *See* Ints.' Mot. Dismiss, ECF. No. 37-1.

as a blank check to permit the federal government to broadly demand the private data of every single voter in the State purportedly to "investigate" the State's compliance, not with the Civil Rights Act at all, but HAVA—an entirely different federal statute. *See id.* § I.B. HAVA itself does not supply DOJ with a claim to New Hampshire's statewide voter registration list because it does not contain any disclosure provision at all. *See id.* § II. Further, neither Title III nor HAVA preempt New Hampshire laws that prohibit the Secretary of State from disclosing highly sensitive voter information. *See id.* § III. And DOJ has not complied with the federal privacy laws that would be necessary for it to collect the private information it demands, even if it were otherwise entitled to it. *See id.* § IV.

DOJ's motion to compel asks the Court to effectively disregard all of these legal deficiencies (and the Federal Rules that govern civil litigation in federal court) to order Secretary Scanlan "to produce an electronic copy of the New Hampshire statewide Voter Registration List, to include *all fields*," even the sensitive information protected under state law. Mot. Compel Produc. at 2, ECF No. 31. In support, DOJ claims that the "[Civil Rights Act] displaces the Federal Rules of Civil Procedure" and authorizes a "special statutory proceeding" in which "Secretary Scanlan . . . must produce the voter-registration lists and other federal election records demanded by the Attorney General." DOJ Mem. at 13 (citation omitted). In other words, DOJ appears to believe that it should be immediately entitled to the ultimate, dispositive relief that it seeks in this action based solely on its "motion for order to compel the production of records."

## ARGUMENT

The Federal Rules of Civil Procedure govern this civil action and provide a roadmap for how this case—like nearly all other civil actions—must proceed. Nothing in the statutory text or the Rules themselves support DOJ's contention that Title III "displaces" the Rules or authorizes a "special statutory proceeding." DOJ Mem. at 5 (citation omitted). Nor does anything in the Rules

3

authorize courts to award dispositive relief—and effectively final judgment—via an order to produce records. The Court should thus deny DOJ's motion and permit this litigation to unfold under the normal course, starting by resolving the pending motions to dismiss, which should resolve this case.

**I.        The Federal Rules are the appropriate process for DOJ's claims.**

The Court should reject DOJ's request to sweep aside the Federal Rules in this case, as its sister courts have done in California and Oregon. *See Weber*, 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402, at *8.[2] The Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case is just such an action. While Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—such as certain admiralty or bankruptcy actions—none involve the Civil Rights Act of 1960. *See* Fed. R. Civ. P. 81(a). Indeed, Rule 81(a)(5) affirms that the Federal Rules generally apply to actions involving a subpoena, "except as otherwise provided by statute, by local rule, or by court order in the proceedings"—a limited exception that does not apply here because Title III does not authorize DOJ to issue subpoenas, nor does it provide for any procedures that depart from the Federal Rules. Congress knows how to create streamlined statutory proceedings, *see, e.g.*, 29 U.S.C. § 161(1)–(2) (authorizing National Labor Relations Board to issue subpoenas and seek "court aid" in compelling compliance under threat of contempt), but it did not do so in Title III. Accordingly, based on the plain text of Rule 1, this action is governed by the Federal Rules of Civil Procedure, just like all other civil actions that lack special carveouts in statutes or the Federal Rules themselves.

---

[2] As Voter Intervenors previously explained, a federal court in Michigan also dismissed a parallel case under Rule 12(b)(6). Intervenors' Reply in Supp. of Mot. Dismiss, ECF No. 53 at 2 (citing *United States v. Benson*, No. 1:25-CV-01148, 2026 WL 362789, at *2, *7 (W.D. Mich. Feb. 10, 2026)).

4

DOJ's demand for a "special statutory proceeding," DOJ Mem. at 13 (citation omitted), is irreconcilable with the statute's plain text because Title III references no such proceeding. The statute merely assigns jurisdiction to hear Title III disputes to "[t]he United States district court for the district in which a demand is made," and provides that such courts "shall have jurisdiction by appropriate process to compel the production" of covered records. 52 U.S.C. § 20705. The Supreme Court has clearly held that where a statute "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964) (emphasis added). *Powell* is directly on point here, because the relevant text of the statute in *Powell* is identical to the relevant text of Section 20705, providing that the federal courts "shall have jurisdiction by appropriate process to compel such . . . production" sought. 26 U.S.C. § 7604(a); *see also* 52 U.S.C. § 20705 (Title III stating appropriate districts courts "shall have jurisdiction by appropriate process to compel the production of such record or paper"). Following the logic of *Powell*, a district court in California recently concluded that "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures," *Weber*, 2026 WL 118807, at *8 & n.15; *see also Oregon*, 2026 WL 318402, at *8 (explaining that the "Supreme Court's holding in *Powell* squarely rejects" DOJ's theory).[3]

DOJ's contrary argument relies on an out-of-circuit opinion from 1962, *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962). But the Fifth Circuit's conclusion on that score is entirely irreconcilable with *Powell*, which the Supreme Court decided two years later. While *Lynd* says

---

[3] If DOJ's goal were to abbreviate the proceedings here—which it has not argued or even suggested would be necessary—it could move under Rule 6 to shorten the time on a motion. Fed. R. Civ. P. 6(c)(1)(C); *see also* 5 Wright & Miller's Federal Practice & Procedure § 1195 (4th ed. 2025) (explaining same alternative as preferred over orders to show cause).

5

that enforcement proceedings under Title III are a "special statutory proceeding," *id.* at 225, *Powell* explains—construing a statute with *identical* text—that "the Federal Rules of Civil Procedure apply," and that "proceedings are instituted by filing a complaint, followed by answer and hearing," 379 U.S. at 58 n.18. After *Powell*, *Lynd*—which was never binding on this Court anyways—does not even control within the confines of the Fifth Circuit. *E.g.*, *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent." (quoting *Gonzales v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010))). To the extent that *Lynd* suggests courts do not apply the Federal Rules to a government document demand, it is simply not the law.[4]

Unlike *Lynd*, *Powell*'s reasoning binds this Court. This Court should thus reject DOJ's suggestion that Title III "displaces the Federal Rules of Civil Procedure," DOJ Mem. at 13, follow *Powell*, and apply those Federal Rules as the appropriate process it follows in nearly every other civil action.

## II. The Court must conduct meaningful review of DOJ's demand.

DOJ is also wrong to minimize the Court's role in reviewing the legality of DOJ's demand. To invoke the powers of a federal court to compel production, the government must show its

---

[4] In other actions, DOJ has pointed to an order from a district court in Connecticut to state election officials in that State to show cause as to why the court should not order the release of the State's voter registration list, Order, *United States v. Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 8, 2026), ECF No. 10. But that one-page order—which was issued in the infancy of that case before the state defendants had appeared (or was even served)—merely operated as a scheduling order; it said nothing about the merits of the case, nor does it contain any legal analysis that could aid this Court. *Id.*; *see also Weber*, 2026 WL 118807, at *19 (finding that "the District of Connecticut order . . . amounts to nothing more than a scheduling order delineating a briefing schedule"). The same court latter issued a clarification explaining that the proper procedural course of the case could be addressed through briefing. Text Order, *United States v. Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 14, 2026), ECF No. 30. That court has yet to substantively address the propriety of proceeding outside of the Federal Rules, or how such a course could be squared with *Powell*. In any event, the Connecticut court also invited further briefing on the procedural question, which will be decided following a hearing currently scheduled later in March. *Id.*

6

investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose." *Powell*, 379 U.S. at 57. After all, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58. And "an abuse would take place if the summons had been issued for an improper purpose." *Id.* As Voter Intervenors explain in their motion to dismiss, that is precisely what has occurred here, where DOJ seeks to compel production of New Hampshire's entire statewide voter list based on a pretextual purpose that is irredeemably flawed as a factual and legal matter. Ints.' Mot. Dismiss, Argument § I.B.

Unsurprisingly, given *Powell*, courts—including the same circuit court that issued *Lynd*—regularly engage in meaningful judicial review of government document requests issued under a variety of statutory schemes. *E.g.*, *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347–50 (1st Cir. 2009) (allowing summons recipient opportunity to rebut government's prima facie case); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing" (internal quotation marks omitted) (quoting *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994))); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"). Nothing in Title III justifies any different treatment, just as the district court in Oregon recently concluded. *Oregon*, 2026 WL 318402, at *8 ("There is no current

or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place." (citing *Powell*, 379 U.S. at 58)).

In arguing otherwise, DOJ relies on *Lynd* and some other cases from the deep South in the early 1960s as evidence that courts can merely rubberstamp DOJ's request. DOJ Mem. at 6–7, 13–14. But the context in which those cases were decided was vastly different. *Lynd* involved demands for voter records from counties in Mississippi and parishes in Louisiana "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." 306 F.2d at 229 n.6; *see also Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855 (M.D. Ala. 1960) ("[T]he demand to the registrars made by the Attorney General . . . follows almost exactly the pertinent wording in Sections 301 and 303 of the [CRA]."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). That was undeniably a valid demand under 52 U.S.C. § 20703, as Title III's "clearest purpose" is to permit investigations "concerning infringement or denial of . . . voting rights." *Lynd*, 306 F.2d at 228; *see also Gallion*, 187 F. Supp. at 853 ("The legislative history leaves no doubt but that [Title III of the CRA] is designed to secure a more effective protection of the right to vote."); *see also Weber*, 2026 WL 118807, at *8 ("The purpose of Title III is to detect voting-related racial discrimination."); *Oregon*, 2026 WL 318402, at *10 ("[T]he 'purpose' required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights."). And there could be no doubt that DOJ had a valid "basis" to suspect racial discrimination in voting in localities where Black residents had

8

overwhelmingly been excluded from the voter rolls.[5] *See, e.g.*, *United States v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962) (explaining that "[n]o Negro had been registered in Forrest County during defendant Lynd's term of office," while "none of the defendants nor their deputies were able to testify to any individual white person who had been rejected"). Moreover, *Lynd* emphasized that it was "of great importance" that the records DOJ sought there were "public records which ought ordinarily to be open to legitimate reasonable inspection," not "confidential, private papers" like those DOJ demands here. *Lynd*, 306 F.2d at 231; *see also* Ints.' Mot. Dismiss, Argument § III. And *Lynd* observed that if there were a "genuine dispute," the court would need to adjudicate "whether the written demand has been made" according to "§ [20703]." 306 F.2d at 226.

None of the factors that made *Lynd* such an easy case are present here. The avowed purpose of DOJ's request falls outside of Title III, because—even by DOJ's own telling—the demand relates not to the protection of constitutional voting rights, but merely administrative requirements imposed by another statute—HAVA—with its own enforcement and investigatory mechanisms from which New Hampshire is partly exempt. *See* Ints.' Mot. Dismiss, Argument §§ I.A–I.B. Nor is it clear how a snapshot of the State's voter file would help DOJ evaluate New Hampshire's list maintenance programs, even if there were some federal list maintenance obligation to investigate, which DOJ fails to show. *See id.* § I.B. There is therefore at least a "genuine dispute" whether the

---

[5] Instead, it was the district court that the Fifth Circuit doubted and admonished for the "interminable proceeding" that delayed DOJ's request for "over 18 months." *Lynd*, 306 F.2d at 227. The lower court's "basic misconception" was to entertain extreme "procedural device[s] [and] maneuver[s]" by the State, *id.* at 225–26, delays which are in no way present here in a proceeding that has been mostly delayed by DOJ itself. *See* Mot. to Stay, ECF No. 12. Such delays explain, in part, *Lynd*'s exasperation with the procedure below. *Cf.* Comment, *Judicial Performance in the Fifth Circuit*, 73 Yale L.J. 90, 93–94 (1963) ("The delays occasioned in *Meredith* and *Lynd*, and caustically noted by the appellate court, do not appear to be accidental or limited; they are a generic feature of civil rights litigation in the deepest south . . . ." (citing *United States v. Lynd*, 301 F.2d 818, 820 (5th Cir. 1962))).

records are subject to production under Title III. *Lynd*, 306 F.2d at 226. Indeed, public reporting and statements by DOJ officials themselves strongly indicate that DOJ's real purpose is to impede voting rights, not protect them. *See* Ints.' Mot. Dismiss, Argument § I.B; *see also Weber*, 2026 WL 118807, at *10 ("Representations by the DOJ itself show that their requests to States for voter roll data go beyond their purported compliance check with the NVRA and into the territory of comprehensive data collection."); *Oregon*, 2026 WL 318402, at *11 ("Plaintiff has continued to engage in conduct raising suspicion about the purposes for which it seeks statewide unredacted voter registration lists."). DOJ has provided no reason to believe that it has a valid basis to suspect that there are HAVA violations in New Hampshire, much less in all 40-plus States from which DOJ has now demanded similar records. Finally, the records that DOJ seeks here are confidential, not public. *Lynd*'s approach may have made sense for requests for public voter registration forms in 1960s Mississippi. But it is entirely inappropriate for the brave new world ushered in by DOJ's wave of extraordinary document demands targeting quintessential private information about all registered voters in the entire State of New Hampshire, and nearly every other State, too.

In its Motion to Compel, DOJ ignores *Powell* but points to a lower state court opinion in South Carolina to argue that federal law preempts New Hampshire's election and privacy laws. *See* DOJ Mem. at 11–13 (citing *Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025), attached to DOJ Mot., Ex. 5 ("S.C. Order"), ECF No. 36-1). But this decision is neither binding nor persuasive. The lower court's ruling was a preliminary one on injunctive relief. S.C. Order at 3. And any discussion of Title III was pure dicta because South Carolina law appears to permit the State's Election Commission to share voter data with the federal government, which was precisely "the conduct [the plaintiff] [sought] to enjoin." *Id.* at 5 (citing S.C. Code Ann. § 7-5-186(C)). New Hampshire law does the opposite: a statute mandates that "the

10

voter database shall be private and confidential," RSA § 654:45(VI), and the state constitution protects a "natural, essential, and inherent" "right to live free from governmental intrusion in private or personal information," N.H. Const. pt. 1, art. 2-b. Thus, the South Carolina order is irrelevant to preemption or whether DOJ is entitled to New Hampshire's statewide voter list.

### III. The appropriate procedural course is for the Court to resolve the pending motions to dismiss and then, if needed, to proceed to discovery.

Consistent with the above, the Court can and should resolve this case via the pending motions to dismiss, not through a "motion for order to compel production of records" that is not authorized by the Federal Rules or any statute. The Federal Rules provide for motions to dismiss for a simple and sound reason: "to test the sufficiency of the complaint." *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010). Motions to dismiss thus serve a crucial gatekeeping function: they are "the tiger patrolling the courthouse gate" from legally defective claims. *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990). The Federal Rules likewise set an early deadline for motions to dismiss because they are a "time-sensitive . . . screening mechanism designed to weed out cases that do not warrant either discovery or trial." *Rios-Campbell v. U.S. Dep't of Com.*, 927 F.3d 21, 24 (1st Cir. 2019) (citation modified). Accordingly, "the drafters of the Civil Rules" "envisioned Rule 12(b)(6) motions as a swift, uncomplicated way to weed out plainly unmeritorious cases." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

As explained more fully in Voter Intervenors' motion to dismiss, DOJ asserts novel authority to compel the production of New Hampshire's complete statewide voter registration list, without any valid statutory basis to do so and contrary to New Hampshire and federal privacy laws. *See* Ints.' Mot. Dismiss, Argument §§ I–IV. In light of the fatal legal deficiencies in DOJ's complaint, resolving DOJ's motion to compel first would invert the proper process, depriving Voter Intervenors and the Secretary of State of their right and opportunity to test the legal

11

sufficiency of DOJ's claims at the outset, as the Rules envision. The motions to dismiss are thus the proper vehicle to resolve DOJ's claim.

Even if the Court denies the motions to dismiss in whole or in part, the next step would be to permit discovery on DOJ's claims. Even at this early stage, it is apparent that—if DOJ has in fact managed to state a claim—there are potential disputes of material fact that may bear on the resolution of this case. For example, even assuming DOJ could seek records under the Civil Rights Act of 1960 to assess New Hampshire's compliance with HAVA, there is a genuine dispute of fact as to whether that is in fact DOJ's purpose. Public reporting has indicated that DOJ intends to create a nationwide voter list, an unprecedented scheme not authorized by any source of law.[6] And Assistant Attorney General Harmeet Dhillon has even stated publicly that DOJ intends to use the information to attempt to compel removal of *hundreds of thousands* of voters from the rolls.[7] More recently, the Attorney General demanded that the Minnesota Governor provide DOJ with the voter list as an apparent condition for withdrawing the thousands of federal agents then in Minneapolis,[8] *see also Oregon*, 2026 WL 318402, at *11 (discussing Bondi letter demanding voter rolls), and recent statements from President Trump urged Republicans to "take over the voting . . . in at least 15 places" and to "nationalize the voting,"[9] *see also Weber*, 2026 WL 118807, at *11 (discussing DOJ and other federal agencies' efforts to amass data). Granting DOJ the final relief it seeks before

---

[6] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.
[7] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET), https://x.com/AAGDhillon/status/2001659823335616795 (stating in video discussing these lawsuits: "You're going to see hundreds of thousands of people in some States being removed from the voter rolls.").
[8] *Read Bondi's Letter to Minnesota's Governor*, N.Y. Times (Jan. 24, 2026), https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html.
[9] Mariana Alfaro, *Trump Wants to "Nationalize the Voting," Seeking to Grab States' Power*, Wash. Post (Feb. 3, 2026), https://www.washingtonpost.com/politics/2026/02/02/trump-elections-nationalize-fraud/.

the Secretary and Voter Intervenors have the opportunity to conduct discovery relevant to these and other factual disputes would be premature and contrary to the well-established practices that govern civil litigation. *See, e.g.*, *Velez v. Awning Windows, Inc.*, 375 F.3d 35, 39 (1st Cir. 2004) ("[T]rial courts should refrain from entertaining summary judgment motions until after the parties have had a sufficient opportunity to conduct necessary discovery.").

## CONCLUSION

For the reasons stated above, Intervenor-Defendants respectfully request that the Court deny DOJ's motion to compel production.


Dated: March 5, 2026

Respectfully submitted,

*/s/ Steven J. Dutton*
Steven J. Dutton, NH Bar No. 17101
**McLANE MIDDLETON, P.A.**
900 Elm Street
Manchester, New Hampshire 03101
Telephone: (603) 625-6464
steven.dutton@mclane.com

Paul Twomey, NH Bar No. 2589
**TWOMEY LAW OFFICE**
PO Box 623
Epsom, New Hampshire 03234
Telephone: (603) 568-3254
polotuama7@gmail.com

Elisabeth C. Frost*
David R. Fox*
Christopher D. Dodge*
Marcos Mocine-McQueen*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
efrost@elias.law
dfox@elias.law
cdodge@elias.law
mmcqueen@elias.law

13

>Walker McKusick*
>**ELIAS LAW GROUP LLP**
>1700 Seventh Avenue, Suite 2100
>Seattle, Washington 98101
>(206) 656-0177
>wmckusick@elias.law
>
>*Counsel for Intervenor-Defendants*
>
>* *Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2026, the foregoing document was served via ECF filing on all counsel of record.

/s/ Steven J. Dutton