IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVE SIMON, in his official capacity as Secretary of State for the State of Minnesota; and the STATE OF MINNESOTA,<br><br>Defendants. | Case No. 25-cv-3761-KMM-EMB |

## UNITED STATES' REPLY IN SUPPORT OF ITS NOTICE OF ADDITIONAL BASIS

The United States respectfully submits this Reply in support of its Notice of Additional Basis ("Notice") (ECF 178, 180) and in response to the Joint Response (ECF 187) filed by State Defendants and Intervenor-Defendants (collectively "Defendants").

Much of Defendants' Joint Response recycles arguments in their motions to dismiss, which fail for the reasons already briefed and argued at length.[1] Defendants mischaracterize the Attorney General's April 17, 2026, letter that is the subject of the Notice (ECF 180-1) as a "new demand." Defs.' Jt. Resp., ECF 187 at 2. It is not. The Attorney General's demand for federal election records under Section 303 of the Civil Rights Act of 1960

---

[1] These arguments are further expounded upon in the recently published opinion from the Department of Justice Office of Legal Counsel. *See* Authority to Obtain and Share Statewide Voter Roll Data, 50 Op. O.L.C. ___ (May 12, 2026) (accessible at https://www.justice.gov/olc/media/1440346/dl).

("CRA"), 52 U.S.C. § 20703, has remained the same throughout this litigation. As clearly stated in the April 17 letter, identifying a report of a noncitizen voting is merely "in addition to the bases the Division has already provided." ECF 180-1 at 1. The April 17 letter likewise made clear that the demand was "for the purpose stated" in the August 13, 2025, letter to Secretary Simon: "to ascertain Minnesota's compliance with the list maintenance requirements of [the Help America Vote Act]." *Id.* at 1-2. Contrary to what Defendants maintain, the United States' filing of its Notice is not an improper attempt to amend the Complaint.[2] Jt. Resp., ECF 187 at 3-4. There likewise is no merit to Defendants' remaining contentions that the Attorney General's demand is insufficient and does not reflect "a legitimate purpose." *Id.* at 4, 6. Therefore, the United States is entitled to production of the federal election records.

## I. THE CRA BROADLY ENCOMPASSES INVESTIGATIONS ASSESSING COMPLIANCE WITH FEDERAL ELECTION LAWS

The CRA authorizes the Attorney General to obtain election records relevant to assessing state compliance with federal election laws and protecting voting rights. Contrary to what Defendants contend, the CRA's plain text does not limit the statute to investigations concerning racial discrimination in voting. Defs.' Jt. Resp., ECF 187 at 5. The Help America Vote Act ("HAVA"), 52 U.S.C. § 20901 *et seq.*, is a federal election law enacted to protect the integrity of federal elections and the rights of eligible voters. As another court

---

[2] The United States has not added claims, altered requested relief, or advanced a new cause of action. The Notice merely informs the Court of additional facts relevant to the Attorney General's existing demand for federal election records under the CRA. It does not implicate Fed. R. Civ. P. 15 or convert the Notice into an amended pleading.

2

recently recognized in *United States v. Benson*, Section 303 of the CRA "aids the Attorney General in assessing states' compliance with federal election law and protecting voting rights," and HAVA falls comfortably within that category. *United States v. Benson* ("*Benson*"), No. 1:25-CV-1148, 2026 WL 362789, at *7–8 (W.D. Mich. Feb. 10, 2026), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026).

Defendants contend that the Attorney General has failed to identify in its April 17 letter any actual HAVA concern or "point to a single provision of HAVA that it even suggests may have been violated." Def. Jt. Resp., ECF 187 at 5. That is not the legal standard for a CRA claim. The Attorney General is entitled to investigate Minnesota's compliance with federal election laws even if only to confirm that no violation has occurred. In *Kennedy v. Lynd*, the United States' only purpose was "to ascertain whether or not violations of Federal law in regard to registration and voting ha[d] occurred." *Kennedy v. Lynd* ("*Lynd*"), 306 F.2d 222, 229 n.6 (5th Cir. 1962). Similarly, in *In re Coleman*, the court noted that "[t]here need be nothing wrong with the registrar's books to entitle [the Attorney General] in good faith to make an inspection and take a copy thereof[]" and "[the Attorney General] is presumed to be acting in good faith and in the proper pursuit of his official duties unless otherwise shown." *In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962). Stated another way, "a sufficient statement [of basis and purpose] would be the assertion that the demand was made for the purpose of investigating *possible* violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (emphasis added); *see also United States v. Morton Salt Co.* ("*Morton Salt*"), 338 U.S. 632, 642-43 (1950) (an agency "can investigate merely on suspicion that the law is being

violated, or even just because it wants assurance that it is not"). To the extent Defendants have alleged bad faith, "that contention goes to the truth of the DOJ's allegations and cannot be addressed on a motion to dismiss." *Benson*, 2026 WL 362789, at *8.

Although the United States is not required to identify any violation of federal law to support its CRA claim, Defendants are wrong in representing that the April 17 letter does not do so. The letter specifically identified concerns regarding Minnesota's compliance with HAVA's voter-registration-list-maintenance requirements. The letter further explained, "…it appears you have failed to remove an ineligible individual… from Minnesota's voter rolls," and that "the Division must verify that no such other individual is registered to vote, in violation of federal law." ECF 180-1 at 2 (citing 18 U.S.C. § 611, 18 U.S.C. § 1015, 52 U.S.C. § 21144(b)).

## II.     THE CRA DOES NOT REQUIRE A SINGLE, IMMUTABLE DOCUMENT

Defendants also make an excessively formalistic assertion that the Attorney General's demand under Section 303 of the CRA must be contained within a "single document." Defs.' Jt. Resp., ECF 187 at 4. They cite *Niz-Chavez v. Garland*, 593 U.S. 155 (2021), a case involving an unrelated statute that refers to "a notice to appear," 8 U.S.C. § 1229b(d)(1). CRA Section 303 does not refer anywhere to "a notice to appear." Instead, it states that the custodian of election records must make such records available "upon *demand in writing* by the Attorney General." 52 U.S.C. §20703 (emphasis added). There is no reason why a "demand in writing" cannot be an exchange of letters discussing compliance and culminating in a demand. *See Benson*, 2026 WL 362789, at *8 n.3 (the exchange of letters "collectively put [the State] on notice of the basis and purpose of its

4

request, which is sufficient to comply with the CRA"); *but see United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026).

Defendants rely on Section 303's reference to "*a* statement of the basis," 52 U.S.C. § 20703 (emphasis added), arguing that the word "a" restricts the Attorney General to a single basis. Defs.' Jt. Resp., ECF 187 at 5. The "a," to the extent it is a quantitative qualifier, refers to the number of "statement[s]" that must be provided as something other than no statement at all. Nothing in the text suggests that the Attorney General is limited to just a single basis or is prohibited from offering additional factual support or explanation for his demand when new details come to his attention.

The fundamental purpose of a demand or notice requirement is to provide the recipient with effective and timely notice that enables them to understand the basis for the complaint and take corrective action. The key consideration is whether the notice contains sufficient information to permit the recipient to identify the alleged violations and bring itself into compliance. *WaterKeepers N. Cal. v. AG Indus. Mfg.* ("*Waterkeepers*"), 375 F.3d 913, 916-17 (9th Cir. 2004). Notice is sufficient if it is reasonably specific and if it gives the accused party the opportunity to correct the problem. *Id*. Although *Waterkeepers* addressed notice requirements of the Clean Water Act under 33 U.S.C. § 1251, it demonstrates that even where a "notice requirement is 'strictly construed,' plaintiffs are not required to list every specific aspect or detail of every alleged violation." *Waterkeepers*, 375 F.3d at 917 (citations omitted). The Ninth Circuit went even further and explained that a second notice letter was not required for additional violations. *Id*. at 920. When multiple

5

demand letters address the same underlying records or issues and are sent as part of a coordinated effort to provide notice and seek compliance, they should be construed together as a single demand under this established principle.

This conclusion is reinforced by settled interpretive canons. Under the ordinary-meaning canon, the Section 303 requirement that a demand include "a statement of the basis," 52 U.S.C. § 20703, is most naturally read as a minimum requirement, not a limitation of later stated additional bases. *See generally United States v. Friedrich*, 402 F.3d 842, 845 (8th Cir. 2005) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as having their ordinary, contemporary, common meaning."). Defendants' reading would improperly convert what is obviously a floor into a ceiling.

Nor does the negative-implication canon (*expressio unius est exclusio alterius*) support Defendants' position. That canon applies, if at all, only where statutory context indicates that the enumeration of items in a statute is meant to be exhaustive. *See generally Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 152 (2003). Here, there is no indication to that effect in 52 U.S.C. § 20703. Congress did not indicate that the Attorney General is permitted to state only one basis. Importing such a restriction would invert the negative-implication canon by manufacturing one from silence. Courts are obligated to "refrain from embellishing statutes by inserting language that Congress has opted to omit." *Jama v. INS*, 329 F.3d 630, 634 (8th Cir. 2003) (quoting *Root v. New Liberty Hosp. Dist.*, 209 F.3d 1068, 1070 (8th Cir. 2000)).

6

Finally, the canon *casus omissus*, further confirms the United States' reading of Section 303 of the CRA. The Supreme Court has held that "Courts cannot supply omissions in legislation, nor afford relief because they are supposed to exist." *United States v. Union P. R. Co.*, 91 U.S. 72, 85 (1875). Allowing the Attorney General to supplement a demand with additional factual support gives meaningful effect to Congress's evident aim of ensuring compliance with federal election laws by maintaining open channels of communication with state election officers.

## CONCLUSION

The Court should consider the United States' Notice (ECF 178, 180) as properly submitted supplemental information supporting its existing CRA demand. Accordingly, the Court should deny Defendants' Motions to Dismiss and grant the United States' Motion to Compel.

DATED: May 15, 2026

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ERIC V. NEFF
Acting Chief, Voting Section
Civil Rights Division

/s/ *Brittany E. Bennett*
BRITTANY E. BENNETT
JAMES T. TUCKER
Trial Attorneys, Voting Section
Civil Rights Division
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
brittany.bennett@usdoj.gov
Tel. (202) 307-2767
Attorneys for the United States